UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NORMAND BEDFORD
(Petitioner)

v.

CA 07 144S
D.C.No.

STATE OF RHODE ISLAND
(Respondents)

**PETITIONER'S MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

Now comes Petitioner, NORMAND BEDFORD, in the above-entitled matter and hereby, moves this Honorable Court, pursuant to **28 U.S.C. A. §2254**, a "Petition for Writ of Habeas Corpus," for immediate release of person in State custody on the grounds that incarceration is illegal, and void on it's face, without legal jurisdiction, and incapable of being affirmed or ratified, pursuant to the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**FACTS AND TRAVEL**

In the months following the United States Court of Appeals for the First Circuit's erroneous Order denying Petitioner's "Petition for Panel Rehearing" on the date of **July 18, 2006,** Petitioner sought appellate review with the United States Supreme Court, Washington D.C., by first filing a "Motion for Enlargement of Time to File a Petition for Writ of Certiorari." However, that Court repeatedly, confused the date of the lower Court Order in relationship to the

time allowed by the Court in bringing a "Petition for Writ of Certiorari." That confusion prompted the Court to send Petitioner's pleadings back to him with instructions of clarification. This process was repeated several times. Each time, Petitioner amended his pleadings to update the filings, and clarify any misunderstandings on the Court's inquiries. Nevertheless, in the interim of preparing new documents for filing in the United States Supreme Court, the Rhode Island Department of Corrections and allegedly, the State's Chief Appellate Attorney, Mr. Aaron L. Weisman, were in collusion to obstruct due administration of justice, and impede his access to the Court, in violation of **18 U.S.C.S. §§1503;** and **§1702**, defined as "Obstruction of legal correspondence." Those actions resulted in the Rhode Island Supreme Court's issuance of an "untimely and improper" Order reactivating Petitioner's criminal appeal, while he was exhausting his appellate remedies in an entirely different "jurisdiction." Notably, the Rhode Island Supreme Court's **January 4, 2007**, Order, required him "to file a brief on appeal, on or before **February 9, 2007,"** and further "denied him the right to file any other pleadings except his brief," constituting a "denial of full and fair access to the Court," in violation of Appellant's First, Fifth, Sixth and Fourteenth Amendment rights to Due Process and Equal Protection of the law. Specifically, Petitioner had sought numerous forms of relief, namely, a "motion for appointment of appellate counsel, motion to be admitted to bail, pending excessive and inordinate delay in the filing of a brief on appeal, and more importantly, his motion to rescind the **January 4, 2007**, Order." <u>See</u> enclosed herein, **(Petitioner's Motion to Stay Criminal Appeal, Pending Leave of Court, to File an**

**Interlocutory Appeal)**, from the R.I. Supreme Court's **improper** and **prejudicial** Orders of **January 4, 2007**, and **March 12, 2007.)** See also, (Petitioner's Motion to Rescind **January 4, 2007**, Order, and 'Stay Criminal Appeal,' dated **January 23, 2007**, describing "conspiracy and alleged collusion," by Assistant Attorney General, Aaron L. Weisman, in alleged "ex parte communication," resulting in "prejudice and irreparable injury," as well as delay, unlawful, and extended incarceration of Petitioner. See above noted motions and Orders in **Exhibit "A"**.

**Issues to be addressed on appeal, pursuant to 28 U.S.C.A. §2254, are as follows:The Denial of meaningful access to the Court; Excessive and Inordinate delay in first appeal; Denial of Counsel for first Appeal; Obstruction of Justice; Illegal inducement of witnesses; and Denial of Counsel for first Motion for New Trial, and Sentencing.**

**Issue: I** **Discussion of Law**

Petitioner first argues that alleged unlawful actions on the part of Chief Appellate Attorney, Aaron L. Weisman, of the Rhode Island Attorney General's Office, resulted in the "denial of meaningful access to the Court," in violation of his First Amendment right guaranteed by the United States Constitution, pursuant to **Lewis v. Casey**, **518 US 343, 135 LEd2d 606, 116 SCt.2174 (1996).** See enclosed **(Motion to Rescind Order, dated January 23, 2007, filed with the R.I. Supreme Court.)** Petitioner further asserts that the above alleged actions resulted in "bias and prejudice," in the State Court system, demonstrating that "there is no opportunity to obtain redress in the state court and corrective process is so clearly deficient as to render **futile** any effort to obtain relief." See **Duckworth v. Serrano**, **454 U.S. 1,3 (1981).**

Petitioner's instant "Petition for Writ of Habeas Corpus should be granted on the merits of the aforementioned claim alone."

Issue: II

Secondly, Petitioner contends that the alleged unlawful actions of Chief Appellate Attorney Aaron L. Weisman, of the Rhode Island Attorney General's Office, now caused further undo prejudice through excessive and unreasonable delay that will result in bringing this Petition to this United States Federal District Court, thus, violating the due process and equal protection clauses of the Fifth and Fourteeth Amendments to the United States Constitution, enunciated in the cases of Harris v. Champion,938 F.2d 1062 (10th Cir.1991); Harris v. Kuhlman,601 F.Supp. 987 (1985), whereby, in note 11, states, that "Where delay between conviction and hearing of appeal exceeds 50 percent of petitioner's sentence, **court can assume that delay is prejudicial.**" Note 6, states that "When state has assigned ineffective counsel resulting in an ordinate delay in perfecting direct appeal and extended imprisonment for petitioner, **it must assume responsibilty.**" In Note 5, it states, that "Ineffective assistance of counsel and failure of state to correct **deficiency** constitute **state action**, redressable through habeas corpus: state involvement is even **greater** when counsel is appointed. 28 U.S.C.A. Section 2254.

Petitoner avers that since the disposition of his "motion for new trial, based on newly discovered evidence" on **December 10, 2002**, and the subsequent redocketing of his appeal on **January 16, 2003**, he

was appointed Michael Devlin, on **March** 28, 2003, to represent him on direct appeal, from his conviction and sentence of 1998. However, attorney Devlin, several months after appointment by the Rhode Island Supreme Court, **declined to enter his appearance.** It then took the R.I. Supreme Court four more months to appoint a new lawyer to Petitioner, specifically, on the date of **July** 08, 2003, appointed counsel Richard K. Corley was assigned, but didn't contact Petitioner for several months, and didn't actually make an **entry of appearance** until **November** 21, 2003. <u>See</u> enclosed (R.I. **Supreme Court Docket History Report, dated** 8-13-2004.) Notably, attorney Richard Corley proved extreme deficiency in his representation of Petitioner/Appellant, and subsequently, withdrew his appearance on **January** 27, 2004. Thus, this Petitioner has only had one **official** appointment of counsel since his **December** 10, 2002, disposition of Superior Court "motion for new trial, based on newly discovered evidence, prior to his appeal redocketing. Therefore, Petitioner is entitled to reappointment of appellate counsel to file his brief, or rather entitled to have his Petition for Writ of Habeas Corpus granted, in light of the facts presented. To reiterate, "state involvement is even greater when counsel is appointed." 28 **U.S.C.A. Section** 2254; U.S.C.A. **Const. Amend.** 6. Petitioner asserts that "sending him back to state courts would be exercise in **futility."** 28 **U.S.C. A. Section** 2254(b). For the factual claims described on this issue, Petitioner is entitled relief through the granting of this Petition.

In the case of **<u>Simmons v. Reynolds</u>,898 F.2d 865 (2nd Cir.1990),** it states in note 3., that "State prisoner, who had made frequent but unavailing requests to have his appeal processed, was not required

by exhaustion of state remedies statute to take further **futile** steps in state court in order to be heard in federal court on petition for writ of habeas corpus. **28 U.S.C.A. §2254(b).** For this reason also, Petitioner is entitled to the granting of his instant petition.

**Issue: III**

Petitioner next, argues that pursuant to the Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his **first appeal as of right. See Evitts v. Lucey, 105 S.Ct.830 (1985), id. at Pp.833-841.** In the case cited, at note 2, it states, that "Right to appellate counsel is limited to **first appeal** as of right and attorney need not advance every argument, regardless of merit, urged by appellant but **must be available to assist in preparing and submitting brief** to appellate court and must play role of active advocate, rather than **mere friend of the court** assisting in **detached evaluation** of appellant's claim. **U.S. C.A. Const.Amends. 6, 14. See** also, **Douglas v. California,372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811,** "that a criminal defendant has a right to counsel on his first appeal as of right-like the promise of **Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed2d 799,"** "that a criminal defendant has a right to counsel at trial-would be a futile gesture unless it comprehended the right to effective assistance of counsel." **Pp.833-838.** It is also, noted in **Evitts v. Lucey, id. at p. 831,** that "for purposes of analysis under the Due Process Clause, respondent's appeal was an appeal as of right, thus triggering the right to counsel recognized in **Douglas v. California, supra. Pp.438-839.**

Petitioner further asserts that he suffers from a debilitating "mental and emotional illness," and was diagnosed with the same, by United States Government standards, pursuant to the "Americans with Disabilities Act," (ADA), under **42 U.S.C.A. §12101**, and is currently, taking prescription medications to mitigate the affects of such. However, mitigating factors do not take him outside the protective provisions of the ADA, because his disability must be determined without consideration of "mitigating circumstances." Thus, Petitioner is entitled to appointment of counsel for his first appeal as a matter of right, pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, pursuant to Article I, §2...Rights to due process and equal protection of the law, as well as governing authorities involving the ADA, which is of federal constitutional dimension.

**Issue: IV**

Petitioner asserts that the State, by and through it's agents, clerks and attorneys, allegedly, "concealed evidence in the record," in a "corrupt endeavor" to obstruct administration of justice, in violation of **18 U.S.C.S. §1503**; and **§1702**, described as "obstruction of legal correspondence," related directly, to Petitioner's **July 14, 2004**, filed "motion to enlarge time to file brief on appeal," received by the Rhode Island Supreme Court via certified mail, addressed to Chief Justice Frank Williams. Notably, the motion was in response to the Rhode Island Supreme Court Order dated **June 29, 2004**, ordering Petitioner to "file his brief in his first appeal on or before **July 30, 2004**." <u>See</u> **enclosed (motion to enlarge time dated July 14, 2004,**

**and R.I. Supreme Court Order dated June 29, 2004.)** Notably, this deliberate misfiling was allegedly, the result of [malicious prosecution and abuse of process], in violation of **42 U.S.C.S. §1983,** and later gave rise to Chief Appellate Assistant Attorney General, Aaron L. Weisman's submitting statements to this United States Federal District Court, that constitute clear violations of **18 U.S.C.S. §1001,** entitled "Fraud and False Statements," defined as, "Whoever, in any matter within the jurisdiction of any department or agency of the United States **knowingly** and **willfully** falsifies, conceals or covers up by any trick, scheme, or devise a material fact, or makes any false, ficticious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, ficticious or fraudulent statement or entry, shall be fined not more than $10,000 dollars or imprisoned not more than five years, or both." Also, "Under this section making it a crime for knowingly and willfully falsifying documents within jurisdiction of department or agency of the United States, **test** is not whether instrument actually **influenced** or caused department or agency of the United States to act **but rather** whether the false statement had a **natural tendency to influence, or was capable of influencing decision of tribunal making determination required to be made,"** citing, **Robles v. U.S.**, **C.A.Ariz.1960, 279 F.2d 401 certiorari denied 81 S.Ct.750, 365 U.S. 836. 5 L.Ed2d 745, rehearing denied 81 S.Ct.1032, 365 U.S.890, 6 L.Ed 2d 201.**

Petitioner posits that the "false statement of material fact," made by Assistant Attorney General Aaron L. Weisman, and later conceded to by United States Federal District Court Magistrate Judge

Jacob Hagopian, and subsequently adopted to by United States Federal District Court Judge Ronald R. Lagueux, relates to the enclosed, and concealed "motion to enlarge time to file brief on appeal to the Rhode Island Supreme Court, dated **July 14, 2004,"** received by the Court twice via certified mail on **August 2, 2004,** in direct contrast to the the Rhode Island Supreme Court's **June 29, 2004,** Order to file brief on appeal, on or before **July 30, 2004,** which later gave rise to United States Federal District Court Senior Magistrate Judge Hagopian's false statement that "it is Bedford that has missed the recent **deadline to file briefs** in the state supreme court for his appeal in this matter." And "Thus, there is no basis to conclude that the state is solely responsible for the delay." **See enclosed (Report and Recommendation of Hagopian, dated October 14, 2004, id. at ps.4-5.)** Specifically, this false statement was made to **deceive** a fact-finder that Petitioner failed to file his brief, "without regard to his **July 14, 2004,** motion to enlarge time to file such, stating viable reasons why he could not comply with the Court's **June 29, 2004,** Order." Some of those reasons were: "deliberate withholding of material exculpatory evidence for direct appeal, denial of transcripts relevant for direct appeal, and denial of counsel for direct appeal." However, with the R.I. Supreme Court's concealment of this "motion to enlarge time, filed on **August 2, 2004,** as 'Letter with exhibits,' instead of what it actually was, a "motion to enlarge time with exhibits," it was easy for United States Federal District Court Magistrate Judge Hagopian to later concede in **two (2) "Reports and Recommendation to Dismiss Petition for Writ of Habeas Corpus,** in **D.C.Nos. 04-271L; and 05-095L,** that Petitioner was somehow responsible for his "excessively delayed appeal

whereby, he could have had his petition rightly granted and been a free man, notwithstanding, other federal constitutional claims, but instead, his "petition for writ of habeas corpus, pursuant to **28 U.S.C.A. §2254**, was **denied** in two (2) separate petitions, based on "fraud, concealment of material evidence, malicious prosecution, and abuse of process, and the filing of false statements of material fact," in violation of federal law, under United States Code Statutes, **18 U.S.C.S. §1503; and §1702; 42 U.S.C.S. §1983; and 18 U.S.C.S. §1001.** Interestingly, when Petitioner/Appellant brought these claims to the attention of the United States Court of Appeals for the First Circuit, Boston, Massachussetts, the Court abused it's discretion and denied Petitioner's "motion for panel rehearing," under the premise that "he was out of time to appeal," in light of the fact, that Rhode Island Department of Corrections Maximum Security officials had him locked-up in an "isolation cell" known as "Disipline confinement," or "segregation" for a period of three (3), months, allegedly, as a result of "playing their part" in obstruction of justice, and conspiracy to defraud the tax-payers out of millions of dollars, until the Court of Appeals, and later the United States Supreme Court, Washington, D. C., denied Petitioner's appeals in this "travesty of justice," under the premise of allegedly being out of time for such appeals. Therefore, Petitioner's instant petition should be granted for the aforementioned reasons alone, and he should be released immediately, from unlawful state cusdody of the Rhode Island Department of Corrections Maximum Security facility, in Cranston, Rhode Island. See also, enclosed **(State's Memorandum in Support of it's Motion to Dismiss Petitioner's Application for Writ of Habeas Corpus, in C.A.No.05-095L**, describing

Assistant Attorney General Aaron L. Weisman's "fraudulent and false claim," id. at p.5, wherein, he states, that "Petitioner was due to have filed his 'brief***on or before **July 30, 2004.**") Again, this was said "without regard to Petitioner's **July 14, 2004,** motion to enlarge time to file brief on appeal," which Mr. Weisman was well aware of due to prior petition for writ of habeas corpus in C.A.No. 04-271L, with the same claims and submissions, both received by him.

Issue: V

Petitioner argues that his claim and factual allegations that the State, by and through it's "agents, attorneys and clerks," indeed withheld exculpatory and impeachment evidence, and made an illegal inducement to two key witnesses, one month before trial, and without discovery update, whereby, the witnesses received a thing of value, to wit sixty-five hundred dollars ($6500.00), for testimony at Petitioner's criminal trial, in violation of federal law, title **18 U.S.C. §201(2)(C)**, knowing that testimony was inherently unreliable, pursuant to **U.S. v. Russell. 411 US 423 (1973);** and **Lerner v. Moran, 542 A.2d 1089 (R.I.1998)**, doctrine and authority, because the deliberate withholding of "exculpatory and impeachment evidence" precluded Petitioner from moving the Court at trial to suppress the testimony, under the rules of evidence, especially, whereas, in the instant case, the State's case rested almost exclusively, on the testimony of the two key witnesses, who received the illegal inducement. Thus, Petitioner's 1998 conviction and sentence was obtained by fraud, and in violation of federal law, warranting the immediate release of

this Petitioner. See **enclosed (Crime Victim's Compensation Program Award Letter, dated December 22, 1998; Voucher dated April 14, 1998, and letter to witness dated July 29, 1997).** Notably, the State, by and through it's agents, attorneys and clerks, made another "fraudulent and false submission," as it relates to the above noted **December 22, 1998,** "Award Letter." Specifically, as it relates to the official date of Petitioner's conviction of **May 22, 1998,** and not as the letter states, in the second paragraph, that "In **1997,** you (Petitioner) were convicted of one count of 1st degree Sexual Assault and one count of 2nd degree Sexual Assault, in the Superior Court case number listed above." This allegedly, and unequivically, was done to lead a fact-finder to believe that Petitioner had already been convicted before the two key witnesses agreed upon the award on **April 14, 1998,** which notably, was just one month prior to his criminal trial. This deceptive tactic by the State is allegedly in violation of **18 U.S.C.S. §1001,** entitled "Fraud and False Statements," and certainly is conducive to the idea and definition of the language and meaning of **18 U.S.C.S. §1001,** which states in pertinent part, that "Under this section making it a crime for knowingly and willfully falsifying documents within jurisdiction of department or agency of the United States, **test** is not whether instrument actually influenced or caused department or agency of the United States to act **but rather** whether the false statement had a natural tendency to influence, or was capable of influencing **decision of tribunal making determination required to be made.** See **Robles v. U.S., C.A.Ariz.1960 279 F.2d 401.** Interestingly, the law required that conviction was prerequisite to any award settlement, and evidence of alleged crime be proven. Repeal of

the "Crime Victim Compensation Act" of 1996, Chapter 25, came after Petitioner's unlawful conviction and sentence in 1998, and "convict-ion is no longer required for payments to be processed." Thus, Petit-ioner's instant petition should be granted on the substantial merits of this claim alone.

**Issue: VI**

Petitioner asserts that his 1998 conviction and sentence is without legal authority, in light of his being denied legal counsel for his first motion for new trial and sentencing hearings on **July 10, 1998**, pursuant to **Johnson v. Zerbst**, **304 U.S.**; **State v. Chabot**, **682 A.2d 1377 (R.I.1996)**; **U.S. v. Mateo**, **950 F.2d 44 (1st Cir.1991)**; and **Faretta v. California**, **422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed2d 562 (1975).** In **Johnson v. Zerbst**, **304 U.S., id. ps.1024-1025**, the court couldn't have made it more clearer, that "If this requirement of the Sixth Amendment is not complied with, the court **no longer has jurisdiction to proceed.** The **judgment** of conviction pronounced by a court without jurisdiction **is void**, and one imprison-ed thereunder may obtain release by habeas corpus. A judge of the United States-to whom a petition for habeas corpus is addressed-shou-ld be **alert** to examine "the facts for himself when if true as alleged they make the trial **absolutely void."** To briefly ellaborate, it began at the close of Petitioner's criminal trial on **May 21-22, 1998**, after Petitioner was wrongly found guilty by jury, in light of his co-coun-sel's deliberate abandonment and failure to make "closing arguments," resulting in a guilty verdict. Nevertheless, trial Justice Edward C. Clifton, of the Providence Superior Court then made a threat to Pet-

itioner that he later carried out on **July 10, 1998.** Specifically, Providence Superior Court Justice Edward C. Clifton, informed Petitioner on **May 22, 1998,** that "he had 20 days to file a "motion for new trial, which your co-counsel Mark W. Dana is going to file on your behalf, however, **'you Mr. Bedford, are going to give the argument.'"** Even though the trial transcripts were apparantly **altered** to delete this outrageous proclamation, many witnesses in the Court-room at the time could affirm the verity of such remarks by the trial justice. On **May 27, 1998,** co-counsel Mark Dana, filed the above noted "motion for new trial," on behalf of Petitioner, however, he wrote in the cover-letter of that motion, that "As you know, Judge Clifton granted my oral motion to withdraw as your attorney on **May 21, 1998."** He further stated that "I strongly suggest you obtain counsel to argue this motion and assist you in **sentencing." <u>See</u> enclosed (motion for new trial, dated May 27, 1998.)** This suggestion prompted Petitioner to file a new motion for appointment of counsel to represent him on his first motion for new trial and sentencing hearings held on **July 10, 1998.** Petitioner's 'motion to appoint counsel was granted on **June 9, 1998,** by Justice Mark A. Pfeiffer.'However, when Justice Edward Clifton learned of such appointment, he allegedly colluded with Assistant Attorney General Mr. Stephen T. Ryan, and assigned counsel Mr. Neil Steingold, who later on **July 10, 1998, "refused to enter his appearance,"** because the Court would not grant him a 4-month continuance. **<u>See</u> (May 19, 1998 transcripts page 338 enclosed),** where Mr. Ryan states in pertinent part, that "Your Honor please, obviously, I have some concerns about, you know, this situation. We met weeks ago, prior to your Honor handling the Nevola trial. Am I'm wondering if this could not have been hashed out

then, or within a week or so with you, with **our meeting in Chambers.** A delay of four months is quite a bit, and I'm wondering if we will be back at square one, given in all this is that the defendant's last motion for D.A. occurred in front of Judge Pfeiffer." id. p.338, lines 10-19. In further support of Mr. Ryan, Judge Clifton, and Mr. Steingold's conspiracy to obstruct justice, Mr. Ryan states for the record, that "And then get down on the record as to whether Mr. Steingold will be in or out, and get that established. And then knowing **the record's covered,** and knowing that Mr. Bedford understands that he faces his sentence today, unless he chooses to get adequate counsel. Because if we **get another counsel,** we will be here at Christmas time, and we're going to do it all over again." id. at p.359, lines 5-10, **enclosed.** In fact, the entire **July 10, 1998,** transcript unequivically, demonstrates a complete miscarriage of justice, in deliberately depriving Petitioner counsel for his first motion for new trial, and sentencing hearings. Justice Clifton affirms this contention by stating for the record, that "And what right, Mr. Bedford, can you articulate as to why this Court at this time should now seek to appoint, which would be well, technically, Mr. Steingold **never entered his appearance,** but he was the fifth attorney." id. at p.356, **enclosed.** In light of the statement made by Justice Clifton on **May 22, 1998,** that "you Mr. Bedford, are going to give the argument," as stated previously, herein, and the above noted statements, it should be abundantly clear that Justice Edward Clifton committed judicial misconduct, conspired, colluded, and maliciously underminded Judge Mark Pfeiffer's authoritative Order appointing Petitioner counsel for some of the most critical stages of proceedings, in violation of the United States Constitution,

pursuant to **Johnson v. Zerbst**, 58 S.Ct. 1019 (1938), 304 U.S. 458; **U.S. v. Mateo**, 950 F.2d 44 (1st Cir.1991); **State v. Chabot**, 682 A.2d 1377 (R.I.1996); and **Maynard v. Meachum**, 545 F.2d 273 (1976). In Chabot, the Supreme Court held, that "where probationer informed trial justice during preliminary discussions in probation revocation proceedings that he had entered psychiatric care unit at county hospital some five months before and that he had been prescribed medication for "major depression," it was incumbent upon trial justice considering probationer's waiver of counsel to conduct more searching inquiry of probationer's then existing mental health and physical condition and, if that inquiry raised further questions concerning probationer's competency to waive counsel, to order that probationer undergo psychiatric evaluation in regard to his competency to waive counsel and to defend himself at revocation hearing." id. at p.1377.

In the case at bar, Petitioner made it abundantly clear to the Court on the date of his "first motion for new trial and sentencing proceedings," that he was suffering from a "mental disability," when he stated, "Is the State aware that I am under - aware of a mental disability, and I'm not competent to represent myself." id. at p.347, **enclosed** herein. Notably, the Court trial justice and the State's Assistant Attorney General Mr. Stephen T. Ryan, both denied knowledge of such disability, yet Petitioner's "Pre-Sentence Report," made several notations on the claim, which the Court and the State's attorney had undoubtedly reviewed prior to sentencing that day, thus, making those statements "fraudulent and false," in violation of **18 U.S.C.S. §1001**, with willful, knowing and malicious intent. Attorney Neil Steingold also informed the Court, that "He (Petitioner) further told me

that he's on, and this is a quote, "a mind altering drug" at the present time. That he took one hundred milligrams of nortriptolen this morning. And the fact that he took that medication was interfering with his ability to fully understand what was going on." id. at p.360-61, **enclosed**, herein. Petitioner couldn't have made his position clearer, when he stated for the record, that "I only understand that I'm being forced." id. at p.362, lines 1-6, regarding "self-representation," without any waiver whatsoever, and without ever being "advised of the dangers and disadvantages of self-representation," pursuant to **Faretta v. California**, **422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed2d 562 (1975)**, doctrine and authority. The Court had a duty to protect Petitioner's Constitutional rights, but instead, "willfully, knowingly, and maliciously," violated those rights. In fact, when all was said and done, Justice Edward Clifton attempted to deliberately "mislead a fact-finder" into believing that Petitioner somehow chose to represent himself, when he stated for the record, "I understand your arguement, sir, and the reason why you didn't have any counsel is that this Court is satisfied, due to one - principally your own decision is not to do so, and that's - I've already ruled on that, Mr. Bedford." id. at p.397, lines 9-13, **enclosed** herein. **See also, p.396.** Petitioner submits his **June 9, 1998, June 16, 1998, and June 25, 1998,** transripts in support of his "Appointment of Counsel, Mr. Neil Steingold," by Judge Mark A. Pfeiffer, to represent him at his 'first motion for new trial, and sentencing hearings,' on **July 10, 1998,** before attorney Steingold **'refused to enter his appearance' enclosed** herein. In most instances where a defendant is denied counsel for his sentencing, the Court would remand for a "resentencing hearing," but in the case

sub judice, Petitioner was denied counsel for his "first motion for new trial," on the same date of **July 10, 1998**, sentencing. Thus, the circumstances at bar, must invoke the authority of **Johnson v. Zerbst**, **304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.1461 (1938)**, making Petitioner's 1998 conviction and sentence "null and void" on it's face. In the case of **Maynard v. Meachum**, **545 F.2d 273 (1976)**, the court stated in part, that "On respondent's analysis, the right to counsel is satisfied, regardless of the reality of self-representation, **so long as counsel is not formally allowed to withdraw and remains in the courtroom.** We do not believe that the protections of this right that have evolved from **Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct.1019, 82 L.Ed 1461 (19-38)**, can be so casually swept away.

Notably, Petitioner's co-counsel Mr. Mark W. Dana, informed him in the enclosed **May 27, 1998**, "motion for new trial," that "As you know, Justice Clifton granted my oral motion to withdraw as your att-orney on **May 21, 1998.**" Then after Neil Steingold was appointed by Justice Mark A. Pfeiffer on **June 9, 1998**, he "refused to enter his appearance." Both attorneys were in the Court-room on **July 10, 1998**, but neither of them protected Petitioner's Constitutional rights, but watched intently, while Petitioner helplessly was forced to rep-resent himself without any waiver whatsoever. Therefore, Petitioner is not only entitled to a new "motion for new trial, but resentencing" as well. Again, this blatant violation of Petitioner's Sixth Amend-ment right to counsel for these critical stages of proceedings, cons-titute a "Void Judgement," pursuant to **Johnson v. Zerbst**, **304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.1461 (1938).** Void Judgement is defined as:

"A judgment that has no legal force or effect, the invalidity

of which may be asserted by any party whose rights are affected at any time and any place, whether directly or collaterally. From it's **inception**, a void judgment continues to be **absolutely null.** It is **incapable** of being confirmed, ratified, or enforced in any manner or to any degree." Voidable judgment is defined as: "A judgment that, although seemingly vailid, is **defective** in some material way; esp., a judgment that, although rendered by a court having jurisdiction, is **irregular** or **erroneous.**"

Notwithstanding, the State, by and through it's attorneys, agents and clerks allegedly, violated the federal bribery statute, title **18** of the United States Code, **§201(2)(C)**, enunciated in **U.S. v. Russell**, **411 US 423 (1973);** and deliberately withholding evidence related to such, evidence that was **material, exculpatory and impeaching**, as defined in **Lerner v. Moran**, **542 A.2d 1089 (R.I.1998).** To add insult to injury, the State, by and through it's agents and clerks "knowingly and willfully," concealed evidence of Petitioner's **July 14, 2004**, "motion to enlarge time to file brief on appeal," a filing that "had a natural tendency to **influence**, or was **capable of influencing decision of tribunal making determination required to be made,**" notably, two (2) separate "Petitions for writ of Habeas Corpus," in **D.C.Nos. 04-271L;** and **05-095L,** referenced in both Reports and Recommendations to Dismiss Petitioner's Petitions, by United States Senior Magistrate Judge Jacob Hagopian, **specifically**, as it relates to "filing brief on appeal to the Rhode Island Supreme Court." **See Robles v. U.S. C.A. Ariz.1960, 279 F.2d 401.** This offence allegedly constitutes violation of **18 U.S.C.S. §1001**, entitled "Fraud and False Statements." **See Note**

**101; see also, Note 118; 117.** The State's only defense to these factual claims, is to confound the matter of Petitioner's "being compelled to involuntarily 'represent himself' on his first appeal, due to his alleged, however, false, inability to maintain working relationships with his appointed attorneys." However, Petitioner can prove that the State's contentions are "false, misleading and plain error," as described at length in Petitioner's "Supplemental Memorandum in Support of previously filed Petition for Writ of Habeas Corpus," in **D.C.No.04-271L**, which notably, was a seventy-two page **memorandum** that was supported by a notorized **Affidavit** and **Claim of lien.** To mention a few appointed attorneys that culminated into an "inflamed record of appointed lawyers," Mr. **Damon D'Ambrosio** was appointed to represent Petitioner in Providence Superior Court for his "motion for new trial based on newly discovered evidence, **"only"**; Attorneys **Michael Devlin, Mark Smith**, and **Neil Steingold** all **"declined to enter their appearance."** Attorneys **Susan Iannitelli**, and **Paula Rosin** were **wrongly** and **prematurely** appointed in the Providence Superior Court, but were "appellate-bound attorneys," at a time when Petitioner was seeking determination of his "motion for new trial based on newly discovered evidence" involving the "illegal inducement of two key witnesses," one month prior to trial. Therefore, as stated in Petitioner's "Supplemental Memo-in **D.C.No.04-271L**, these attorneys **must not be part of the number of attorneys that Petitioner officially had.** Even Justice Edward Clifton emphasized this fact, when stating, "And what right, Mr. Bedford, can you articule as to why this Court at this time should now seek to appoint, which would be - well, technically, **Mr. Steingold never entered his appearance, but was the fifth attorney."** id. at p.356, **enclosed.**

This statement by Justice Edward C. Clifton was made on **July 10, 1998,** when he deliberately, knowingly, and maliciously deprived Petitioner of counsel, without a waiver, and in a "corrupt endeavor" manipulated, coerced and compelled Petitioner to defend himself in some of the most critical stages of proceedings, that of his "first motion for new trial, and sentencing hearings, virtually, undermining the authority of Justice Mark A. Pfeiffer's **June 9, 1998,** appointment of counsel Order, assigning Mr. Neil Steingold as representative for this Petitioner.

As shown from the **enclosed** "motion to rescind **January 4, 2007, improper** and **inopportune** Order, and stay criminal appeal," dated **January 17, 2007,** but certified **January 23, 2007,** filed with the Rhode Island Supreme Court, and a **second** "motion to stay criminal appeal, pending leave of court, to file interlocutory appeal," dated **March 17, 2007,** but certified **January 21, 2007,** filed with the Rhode Island Supreme Court, along with it's Appendix's 1-9, and Affidavit of Truth, Petitioner has demonstrated that "there is no opportunity to obtain redress in the state court and that corrective process is so clearly deficient as to render **futile** any effort to obtain relief," pursuant to **Duckworth v. Serrano**, **454 U.S. 1,3 (1981).** "Futility" may be established by demonstrating that relief has been diligently sought in the state courts but those efforts have been frustrated by an inordinate delay and denial on the state's part. **See Whitman v. Ventetuolo**, **781 F.Supp. 95, 98 (D.R.I.1991)(citing Odsen v. Moore, 445 F.2d 806, 807 (1st Cir.1971).** Petitioner's "motion for appointment of counsel, motion to be admitted to bail, and motion to resc-

ind **January 4, 2007,** Rhode Island Supreme Court Order," enclosed herein, were meritorious and proper. However, the Rhode Island Supreme Court **rejected** all the aforementioned and sent them back to the Petitioner, simply because the evidence therein, is both damaging to the State, and the Court expected Petitioner to **acknowledge** and **acqiesce** their **January 4, 2007, subjecting him to default.** This was done after the Court **received** and **filed** Petitioner's "motion to rescind that improper Order." The Rhode Island Supreme Court has virtually "denied Petitioner full and fair access to that Court," in violation of his due process and equal protection rights. Thus, Petitioner has given the state court "one full opportunity to resolve any constitutional issues" through "one complete round of the State's established appellate review process," or at least attempted to, pursuant to **O'Sullivan v. Boerckel**, **526 U.S.838, 845 (1991).**

## Conclusion

Petitioner, after several years of seeking "federal habeas corpus" relief, despite various obstruction of justice claims, and his being denied the right to be heard beyond the United States Federal District Court level, with the exception of "unfair process" in the United States Court of Appeals for the First Circuit, he finally, was lead back to the State-Court-System, where he attempted to obtain relief in what has been a "one hundred and four month delay in filing of a direct appeal of nineteen ninety-eight conviction and sentence." It is now apparant, as was many many years ago, that such prejudice exists within the State Court, that it is virtually impossible to obtain

any State Corrective Process whatsoever. Notwithstanding, the excessive and inordinate delay of 104-months, in the filing of an appellate brief, nor the bias and prejudice that clearly exists, Petitioner's factual allegations of "concealment of material evidence," obstruction of justice, and the submission of knowingly false and fraudulent statements," in violation of **18 U.S.C.S. §§ 1503; §1702; §1001**, as well as violations of **42 U.S.C.S. §1983**, described as [malicious prosecution, and abuse of process], not only warrant, but demand relief by the granting of the instant petition, issuing an Order for the immediate release of Petitioner, from unlawful state custody of the Rhode Island Department of Corrections Maximum Security facility, in Cranston, Rhode Island.

Petitioner submits the attached and associated "Affidavit of Truth" in Support of this memorandum and the Exhibits and Appendix's enclosed.

Therefore, for all the aforementioned reasons, Petitioner prays that the instant "Petition for Writ of Habeas Corpus, pursuant to **28 U.S.C.A. §2254**," be granted.

**Respectfully submitted**

**Dated: March 28, 2007.**

Normand Bedford

NORMAND BEDFORD, Pro se
**P.O. BOX 8273**
**CRANSTON, R.I.02920-0273**

**Certification**

I, the undersigned hereby, certify, that I, caused a true copy of the within "Petition for Writ of Habeas Corpus, with the attached Memorandum in Support thereof, and associated Affidavit of Truth," to be mailed this 16th day of **April**, **2007**, postage prepaid, to: Mr. Aaron L. Weisman, Rhode Island Attorney General's Office, 150 South Main Street, Providence, Rhode Island 02903. Copy sent to U.S. Federal District Court, 1 Exchange Terrace, Providence, Rhode Island 02903, via certified mail receipt, Article No. 7006 0810 0000 4647 2047.

**Dated: March 28, 2007.**

Normand Bedford

**NORMAND BEDFORD, Pro se**
**P.O. BOX 8273**
**CRANSTON, RI 02920-0273**