UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NORMAND BEDFORD
(Petitioner)

v.

D.C.Nos.07-00144;
D.C.No. 04-271L;
D.C.No. 05-095L.

STATE OF RHODE ISLAND, ET AL., Director Ashbel T. Wall II, Rhode Island Department of Corrections, et al.
(Respondents)

**PETITIONER'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM WITH EXHIBITS A-S IN SUPPORT OF PENDING PETITION FOR WRIT OF HABEAS CORPUS**

Now comes Petitioner, NORMAND BEDFORD, in the above-entitled matter and respectfully asks leave to submit and file the enclosed "Supplemental Memorandum in Support of his pending Petition for Writ of Habeas Corpus," in D.C.No.07-00144, and previous petitions in D.C. Nos.04-271L; and D.C.No.05-095L, and it's associated and attached Exhibits A-S, with supporting 'Declaration.'" Petitioner specifically, seeks leave to submit and file the above in the interest of justice, and to more fully describe his "illegal and void judgment of 1998, conviction and sentence" warranting immediate release from unlawful State custody of the Rhode Island Department of Corrections Maximum Security facility in Cranston, Rhode Island, wherefore, it is prayed that the instant motion be granted respectively.

Respectfully submitted

Dated: August 3, 2007.

Normand Bedford
NORMAND BEDFORD, Pro se
P.O. BOX 8273
CRANSTON, RI 02920-0273

**Certification**

I the undersigned hereby certify that I caused a true copy of the within "motion for leave to file supplemental memorandum and exhibits A-S," to be mailed this 9th day of **August**, **2007**, postage prepaid, to: Aaron L. Weisman, R.I. Attorney General's Office, 150 South Main Street, Providence, R.I. 02903; Copy sent to U.S. District Court, Office of the Clerk, 1 Exchange Terrace, Providence, R.I. 02903, via certified mail receipt, article No. 7005 1820 0003-5999 0820.

**August 3, 2007.**

Normand Bedford

**NORMAND BEDFORD, Pro se**
**P.O. BOX 8273**
**CRANSTON, RI 02920-0273**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NORMAND BEDFORD
(Petitioner)

v.

D.C.Nos.07-00144;
D.C.No. 04-271L;
D.C.No. 05-095L.

STATE OF RHODE ISLAND, ET AL., Director Ashbel T. Wall II, Rhode Island Department of Corrections, et al.
(Respondents)

**PETITIONER'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

## Facts and Travel

On **April 20, 2007**, Petitioner, NORMAND BEDFORD, a Rhode Island State inmate, filed a habeas petition in the district court for the District of Rhode Island. The district court transferred the matter to the United States Court of Appeals for the First Circuit, noting that he needed to obtain that court's permission to file the petition. See 28 U.S.C. §2244(b)(3)(A) (requiring court of appeals authorization for a "second or successive" habeas petition). Upon receiving the court's transfer order, that court opened appeal No. **07-1646.** Bedford separately appealed the transfer order, initiating appeal No. **07-1785.** That court later concluded that the district court erroneously transferred the matter and vacated the district court's **April 23, 2007**, transfer order, and remanded the case for further proceedings by order and judgment dated **July 17, 2007.** See **enclosed (July 17, 2007, Judgment)**, as **Appendix "A".** The issues to be considered in the instant supplemental memorandum are as follows: Denial of counsel

for closing arguments at trial; Compelled to wear prison garb in the presence of the jury at trial; Denial of counsel for first motion for new trial, and sentencing on **July 10, 1998**; Continual withholding of evidence prior to trial, and thereafter; Illegal inducement of witnesses prior to trial; Unnecessary and excessive delay in first appeal of illegal and void judgment of conviction and sentence; Failure of trial justice to instruct jurors on essential element of statute **§ 11-37-1(8)**, in order to find defendant guilty of alleged crime.

**Issue I**

Petitioner contends that he was deprived of effective assistance of counsel, when he was deprived of "closing arguments," at his trial in **May 19-22, 1998**, without a knowing, intelligent or effective waiver. This occurred when trial justice (Clifton J.), assigned trial attorney as "co-counsel" after an irremedial breakdown in communication between Bedford and his attorney. Shortly after co-counsel Mark Dana, agreed on record to make closing arguments for the defense, he left his seat without explanation to the jury or court and went and sat in the rear of the court-room, completely abandoning his client (Bedford) thus, violating his Sixth Amendment right to the effective assistance of counsel at all critical stages of proceedings, guaranteed by the United States Constitution, enunciated in **State v. Chabot, 682 A.2d 1377 (RI 1996); Briscoe v. State, 606 A.2d 103 (RI 1992); Johnson v. Zerbst, 304 US 458 58 S.Ct. 1019, 82 L.Ed 1461 (1938)**; and **U.S. v. Mateo, 950 F.2d 44 (1st Cir. 1991)**. See enclosed **(Partial transcripts** of May 19-22, 1998, pages 245-281) as **Exhibit "A" herein.**

## Issue II

Petitioner next argues that he was compelled to wear **identifiable** prison garb at his criminal trial on **May 19-22, 1998**, in the presence of the jury, when he was prohibited to receive a readily available suit from his father. The cause of Bedford not having presentable attire for the start of his trial was due to an assault incurred by another inmate at the State prison the night before. The reason Bedford was barred from receiving his suit in Court was due to an alleged "Security" concern, and the denial of the Rhode Island Department of Corrections County Jail to allow him access to the same, though various unsuccessful attempts were made. The record reflects a lengthy discussion on the subject matter, essentially constituting his relevant **objection** to compelling circumstances forcing him to wear **identifiable** prison garb in the presence of the jury, in violation of Bedford's Constitutional rights enunciated in **Felts v. Estelle**, **875 F.2d 785 (9th Cir. 1989)**; Tarpley v. Dugger, **841 F.2d 359 (11th Cir. 1988)**; Bently v. Crist, **469 F.2d 854 (9th Cir. 1972)**. **See enclosed (Partial transcripts of May 19-22, 1998, pages 65-72) as Exhibit "B" herein.**

## Issue III

Petitioner asserts that his Due Process and Equal Protection of the law rights were violated in contravention of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, when he was compelled to represent himself at his **first** motion for new trial, and sentencing hearings on **July 10, 1998**, without a knowing, intellig-

ent or effective waiver, and in light of the fact that the Superior Court, justice Mark A. Pfeiffer, had granted Bedford's **Pro se** motion for appointment of counsel on **June 9, 1998,** for the specific purpose of representing him for the **July 10, 1998,** critical stages of proceedings. Bedford further asserts that the Superior Court justice Edward C. Clifton, erred in denying his later request for newly appointed counsel on **July 10, 1998,** after appointed counsel Neil Steingold, refused to **enter his appearance** at the eleventh hour despite his appointment by the Superior Court on **June 9, 1998, (Pfeiffer, J.),** instead, he made patronizing remarks to the Court regarding Bedford's then taking "mind altering drugs" for his documented mental disabilities, to which, he was collecting disability benefits from the United States Government at the time, thus, violating Bedford's Sixth Amendment right to effective assistance of counsel, ellaborated in the cases of **State v. Chabot, 682 A.2d 1377 (RI 1996); Briscoe v. State, 606 A.2d 103 (RI 1992); Johnson v. Zerbst, 304 US 458 S.Ct. 1019 82 L.Ed 1461 (1938); U.S. v. Mateo, 950 F.2d 44 (1st Cir. 1991). See** also, **Johnson v. United States, 413 A.2d 499;** and **Angarano v. U.S., 329 A.2d 453 (1974)(en banc),** whereby, the court described the standard of prejudice of counsel's incompetence "blotting out the essence of a substantial defense," to which, inference can be drawn therefrom relevant to the instant case of this Petitioner reflective in the entire trial record at bar. **See enclosed (Partial transcripts of July 10, 1998, certified as May 19-22, 1998, pages 332-362; and pages 396-397) as Exhibit "C".**

**Issue IV**

Petitioner contends that the trial justice Edward C. Clifton, and the State collectively, committed reversible error by the **deliberate** withholding of **exculpatory** and **impeachment** evidence, and the subsequent illegal inducement of two key witnesses prior to his criminal trial, whose **credibility** was a crucial element of the State's case in light of their testimony being the only circumstancial evidence of the State's case, thus, the **exculpatory** and **impeachment** evidence was **material** to Petitioner's defense, as enunciated in **Lerner v. Moran**, 542 A.2d 1089 (RI 1988); and **State v. Wyche**, 518 A.2d 907 (RI 1986). In **Wyche** the court concluded that "We stated specifically that "[w]hen the failure to disclose is **deliberate**, this court will not concern itself with the degree of harm caused to the defendant by the prosecution's misconduct; **we shall simply grant a new trial."** (Emphasis added.) 518 A.2d at 910. To ellaborate, it was on **January 16, 1997**, that two key witnesses filed an "Application for Criminal Injuries Compensation" specifically, for alleged injuries suffered by Petitioner. In actuality, the above "Application" was an "Interim Application." There were two subsequent applications filed, under Claim Nos. 970035; and 970036. See **enclosed (Application letter dated July 29, 1997; and Voucher for payment dated April 15, 1998; and letter hand written by Claimant Valentina, time stamped April 09, 1998, asking in so many words, "How the money can be spent.") as Exhibit "D"**. It was on the same date of Claimant's hand written letter time stamped **April 09, 1998**, signed by Valentina Patnaude, that the two key witnesses **"Agreed upon an Award for Settlement in the amount of sixty-six hundred and**

**ten dollars and fifty-five cents ($6,610.55), one month prior to Petitioner's criminal trial on May 19-22, 1998.** Mysteriously, the **December 22, 1998, "Award letter,"** erroneously, documents the date of Petitioner's conviction as being **"1997"** when in fact he had not yet been tried by jury. This allegedly was deliberately altered in violation of the Criminal Injuries Compensation Program Statute **12-25-23(c)(2)**, entitled **Terms of the award. See Exhibit "G", of Petitioner's pending Petition, in D.C.No.07-00144, as December 22, 1998, "Award letter."** Notably, both the trial justice, Edward Clifton, and the State's Assistant Attorney General, Stephen Ryan, repeatedly denied having any knowledge of the application or inducement of the two key witnesses, however, numerous facts contradict that claim. In fact, **Article 25 Superior Court, R.I.G.L. 12-25-6,** entitled **Limitations upon awarding compensation is conducive to their knowledge.** Specifically, **subsection (c),** states in pertinent part, that **"No compensation shall be awarded when the court or the treasurer with the concurrence of the court in it's discretion feels unjust enrichment to or on hehalf of the offender would result."** Petitioner contends that in light of the structure, and the Rules and Regulations of the Criminal Injuries Compensation Program, **chapter 42 of title 35,** the appication and payment process could not have escaped the attention of the Superior Court and the State Attorney General's Office. Moreover, in further corroboration of Petitioner's contention that the withholding of that evidence and the illegal inducement of the two key witnesses was **deliberate** and **obscure,** he asserts that one of the key witnesses, namely, Valentina Patnaude, who received the award, was interviewed by a Dr. Jenny, of Hasboro's Childrens Hospital on the date of

**January 16, 1997**, when Dr. Jenny, documented **twice** that "Valentina Patnaude, the mother of the complaining witness, Nicole Desourdy, keeps asking, 'How am I going to live without Normand's money?'" This declaration is only a paraphrase to the actual "Medical Report of Dr. Jenny," who testified at Petitioner's criminal trial on **May 19-22, 1998.** The irony of Valerie Patnaude's declaration to Dr. Jenny which was made and documented **twice** in the report, is that, on the same day of the interview with Dr. Jenny, Valerie and her daughter Nicole, left the office and went straightway to the Criminal Injuries Compensation Program and filed their "Interim Application" to which, they later received the award for testimony given just one month later at trial, constituting the illegal inducement claim. Petitioner asserts that had this evidence been provided to the defense in a Rule 16(a) Discovery update by the State, it could have been presented to the jury as a "reasonable and viable motive to fabricate the charges against the Petitioner." Additionally, Petitioner was not only precluded from "suppressing the two key witnesses testimony" on the grounds of it's **inherent unreliability**, as enunciated in **U.S. v. Russell**, 411 US 423 (1973); See also, **U.S. v. Meinster**, 619 F.2d 1041, 1045 (4th Cir. 1980), but he was further precluded from effective cross-examination as it related directly to the connection between the documented declaration to Dr. Jenny, about "How am I going to live without Normand's money," and the subsequent leaving of the office and going straightway to the Criminal Injuries Compensation Program and filing an "Interim Application" on the same day of **January 16, 1997**, and later receiving a substantial award for testimony.

Another clear indicator of the State's **deliberate** withholding of **exculpatory** and **impeachment** evidence, and the subsequent illegal inducement of the two key witnesses with a thing of value, to wit, monies in the amount of sixty-six hundred and ten dollars and fifty-five cents ($6,610.55), agreed upon and awarded just one month prior to Petitioner's criminal trial, is that when the "newly discovered evidence was manifested to Petitioner in the form of the **December 22, 1998**, Award letter as **Exhibit "D"**, he later filed a Subpoena for the Crime Victim Compensation Program File. However, the State filed a "Motion to Quash" on **December 14, 1999**, because even after trial, the State did not want Petitioner to have that evidence. When the file was granted and produced, it was later learned that the file was incomplete. Thereafter, Petitioner was compelled to file yet another Subpoena for the remaining undisclosed evidence. The State again, attempted to prevent Petitioner from obtaining that evidence by filing a second "Motion to Quash" on **November 25, 2002**. **See (State's two Motions to Quash, enclosed as Exhibit "E")**. Incidently, Petitioner suffered undo prejudice when his court-appointed attorney refused to seek the remaining undisclosed file after the discovery that the first time it was produced, it was incomplete. Attorney Stephen T. Morrissey, as a result of Petitioner's reasonable request, filed and was granted a "Motion to Withdraw" in **February** of **2000**, leaving Petitioner to Subpoena and obtain the remaining undisclosed evidence, but not before the Superior Court, justice Edward C. Clifton, afterwards denied Petitioner a newly appointed lawyer to argue his "Motion for New Trial, Based on Newly Discovered Evidence," a motion that wasn't decided until **December 10, 2002**, for lack of representation, thus, creating an

excessive and inordinate delay in filing a direct appeal, from an otherwise "illegal and void judgement of conviction and sentence" imposed by the Providence Superior Court, justice Edward C. Clifton, without the benefit of effective assistance of counsel for closing arguments at trial, for Petitioner's first motion for new trial, or for his sentencing hearing on **July 10, 1998,** in violation of due process and equal protection of the law, pursuant to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, as enunciated in **Johnson v. Zerbst, 304 U.S. 458 S.Ct. 1019, 82 L.Ed 1461 (1938),** where the court concluded that "A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court-as the Sixth Amendment requires-by providing counsel for an accused who is unable to obtain counsel, who **has not intelligently waived this constitutional guaranty,** and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, **the court no longer has jurisdiction to proceed.** The judgment of conviction pronounced by a court without jurisdiction **is void**, and one imprisoned thereunder may **obtain release by habeas corpus.** A judge of the United States-to whom a petition for habeas corpus is addressed-should be **alert** to examine 'the facts for himself when **if true** as alleged they make the trial **absolutely void.**" Therefore, notwithstanding Petitioner's presentation of **exculpatory** and **impeachment** evidence, the submission of material facts and circumstances involving various violations of his rights of both State and Federal Constitutional dimension, he is clearly entitled to immediate relief by the granting of his Petition for Writ of Habeas Corpus, under **D.C.Nos.07-00144; D.C.No.04-271L; and D.C.No.05-095L.**

## Issue V

Petitioner argues that his Constitutional rights, pursuant to the due process and equal protection clauses of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, have been egregiously violated warranting immediate relief by means of federal habeas corpus remedies, pursuant to **28 U.S.C. §2254**, enunciated in **Harris v. Champion**, **15 F.3d 1538 (10th Cir. 1990)**; **Simmons v. Reynolds**, **898 F.2d 865, 870 (2d Cir. 1990)**; **Odsen v. Moore**, **445 F.2d 806 (1st Cir. 1971)**; and **Coe v. Thurman**, **922 F.2d at 533**. Petitioner asserts that the volumes of evidence submitted to this Honorable Court have demonstrated that the State is responsible for the unreasonable and excessive delay in filing a direct appeal from an otherwise illegal and void judgment of **1998** conviction and sentence, notwithstanding, the **cause** and **prejudice** shown by means of the State's concealment of material evidence that warrants immediate release from unlawful State custody of the Rhode Island Department of Corrections Maximum Security prison, a concealment that is violative of Federal law, **18 U.S.C. §1001**, entitled "Fraud and False Statements" under Note 101, which states in pertinent part, that "Under this section making it a crime for **knowingly** and **willfully** falsifying documents within jurisdiction of department or agency of the United States, **test** is not whether instrument actually influenced or caused department or agency of the United States to act but **rather** whether the false statement had a **natural tendency to influence, or was capable of influencing decision of tribunal making determination required to be made.** See **Robles v. U.S., C.A.Ariz.**, **1960, 279 F.2d 401.** This is

a claim more fully described in Petitioner's "Criminal Complaint, Affidavit and Claim of Lien," with it's Appendix's 1-4; and Exhibits 1-7, filed against United States District Court Magistrate Judge Jacob Hagopian; and Rhode Island Assistant Attorney General, Aaron L. Weisman. See **(Exhibit to Petitioner's Motion for Relief from Judgement and Orders in D.C.Nos.04-271L; and D.C.No.05-095L, filed under D.C.No.07-00144.)(Not enclosed).**

The subject matter of the purported "Concealment of material evidence" claim is, that of Petitioner's Rhode Island Supreme Court filed "Motion for Enlargement of Time to file brief on appeal," dated **July 14, 2004,** received by that Court on **August 2, 2004,** via certified mail receipt, but erroneously filed as **"Letter with Exhibits"** and in direct response to that Court's **June 29, 2004,** Order (ordering Petitioner to file an appellate brief on or before **July 30, 2004). See Exhibit "F".** This deliberate "Concealment" later gave rise to the aforementioned filing of "False and Fraudulent Statements" in violation of **18 U.S.C. §1001,** as described in Petitioner's Criminal Complaint, Affidavit and Claim of Lien, which to paraphrase, stated that "Bedford fails and continues to fail to file his brief with the Rhode Island Supreme Court," **without fair assessment or acknowledgement of his July 14, 2004, Motion to Enlarge Time,** filed on 8-2-2004, as **"Letter with Exhibits."** Thus, ultimately, **influencing decision of tribunal to error in judgement. See** (U.S. District Court Magistrate Judge Jacob Hagopian's Report and Recommendation to dismiss Petitioner's Petition for Writ of Habeas Corpus, in **D.C.Nos.04-271L; and D.C.No.05-095). See (Petitioner's Motion to Enlarge Time dated July 14, 2004, as Exh. "G").**

## Issue VI

Petitioner contends that the trial justice, Edward C. Clifton, committed reversible error that entitles him to the immediate vacation of his otherwise "illegal and void judgement of 1998 Conviction and Sentence," by reason of the alleged deliberate failure to instruct the jurors in relation to an alleged act of digital penetration in connection to first degree sexual assault Statute §11-37-1(8), in accordance with the principles enunciated in **State v. Griffith**, 660 A.2d 704 (R.I. 1995); **State v. Bryant**, 670 A.2d 776 (R.I. 1996); **State v. Burke**, 522 A.2d 725 (R.I. 1987); and **State v. Estrada**, 537 A.2d 983, 987 (R.I. 1988). **See Exhibit "H" (Tr. ps. 303-311) enclosed.**

In **Griffith**, that case in respect to digital penetration required that the trial justice instruct the jury that such penetration must be carried out with the intent of sexual arousal or gratification in order for the necessary element of **mens rea** to be established in a charge of first-degree sexual assault. **Id. at 706.** This holding was made with the full realization that the statute for first-degree sexual assault, unlike the statute in respect to second-degree sexual assault, does not contain the words "sexual arousal or gratification." **Id.** In **Griffith** we formalized the need for such an instruction to establish the element of **mens rea** because "[a]bsent such instruction the jury could have convicted defendant because of an innocent touching." **Id. at 707. Cf. Exhibit "I" (Tr. p.29)(Tr. ps. 303-311) as Exhibit "H".**

Petitioner asserts that the record reflects that no objection was made regarding the trial justice's alleged deliberate failure to

instruct the jury to establish the element of **mens rea,** however, as enunciated in **State v. Bryant, 670 A.2d 776 (R.I. 1996),** the State Supreme Court recognized an exception to their raise-or-waive rule "when the issue at trial is based upon a novel rule of law of which counsel could not have reasonably known at the time of trial." **Id. at 783. See also, State v. Burke, 522 A.2d 725 (R.I. 1987),** where the court held, that "when an intervening decision of this court or of the Supreme Court of the United States establishes a novel constitutional doctrine, counsel's failure to raise the issue at trial will not preclude our review." **Id. at 731. See also, State v. Estrada, 537 A.2d 983, 987 (R.I. 1998).**

Petitioner's assertion that the trial justice's alleged "foreknowledge and awareness" of his obligation to give jurors instruction to establish the element of **mens rea,** as it relates to Count 1 of his Indictment for first-degree sexual assault, as well as his alleged "deliberate" failure to give such instruction amounts to a complete "miscarriage of justice" and violated his right to a fair trial. There are several points in the record that support Petitioner's assertion. The first is at Tr. p.29, where Assistant Attorney General, Stephen Ryan, when discussing an issue of the admissability of Rule 404(b) evidence, states that "But certainly under 404(b), they are admissable. Again, under relevance, it is certainly probative as far as this defendant because the State has to prove that the acts committed on December 27 were committed for the **defendant's own sexual arousal and gratification. We have to meet that burden."** The trial justice replies with a **specific** and **peculiar** inquiry asking, "Specifically as to Count 2." Ryan answers "Correct." The trial just-

ice in requesting further confirmation that both were on the same page, states again, "The second degree." **Id. at Tr. p.29.** The second point in the record only corroborates that the above declaration is indicative of the trial justice's "foreknowledge and awareness" and "deliberate" failure to give the jurors the required instruction. Specifically, after the jurors both retired to deliberate and were sworn in as jury keepers, the trial justice made an untimely inquiry as it related to "jury instructions," when stating, that "Mr. Bedford, for the record, after the Court gave the instructions as to the law to be applied by this jury, I asked that Mr. Dana ask you whether or not you had any objections to the instructions. Did he, in fact, ask you that question, sir. Bedford replied, Yes." The trial justice went on to state, that "Mr. Dana reported back to this Court that you had no objections to the instructions as given, is that accurate?" Bedford notably, replied, that **"I have no understanding of what he was regarding. I have no understanding of the law, so I couldn't give --."** Thus, this late and untimely inquiry by the trial justice only goes to corroborate the first declaration as noted above. **Id. Tr. p.303-311; cf. Tr. p.29.** Notwithstanding, the record reflects that Bedford's co-counsel Mark W. Dana, completely abandoned his client immediately prior to closing arguments, leaving Bedford to give his own "closing arguments," a process that was never executed. In fact, co-counsel Dana, actually got up from the main table and went and sat in the rear of the Court-room and ignored Petitioner (Bedford's) pleas for assistance in "closing arguments," therefore, how he could effectively communicate with his client after those events are left for private interpretation. The fact remains that even without an objection to the

trial justice's failure to give the jurors instruction in accordance with the **Griffith** doctrine, Petitioner's case at bar meets the standard of the raise-or-waive rule enunciated in **State v. Bryant, 670 A.2d 776 (R.I. 1996)**; and **State v. Griffith, 660 A.2d 704 (R.I. 1995)**, where the State Supreme Court held, that "The existence of a **mens rea** is the rule rather than the exception under our jurisprudence, a principle "so deeply rooted in American law" that its absence in a statute does not mean the Legislature declined to require a specific mental state but that it rather "merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation." **See State v. Tobin**, 602 A.2d at 534 (quoting **Morrissette v. United States, 342 U.S. 246, 252, 72 S.Ct. 240, 244, 96 L.Ed. 288, 294 (1952))**. Adhering to the reasoning of the **Morrissette** Court, we hold that the first-degree child molestation statute carries an **implied intent requirement.**

Moreover, under **G.L.1956 (1985 Reenactment) § 8-2-38,** the court is required to instruct the jury on **all elements** of a criminal charge. We have stated that if a judge fails to carry out this requirement and omits an instruction on a necessary element of a crime, any ensuing conviction **must be vacated. State v. Tobin, 602 A.2d at 534-35. See enclosed (Petitioner's partial transcripts pages 303-311, as Exhibit "H")(as it relates to trial justice's failure to instruct jurors on necessary element of charge.) See also, enclosed (Petitioner's partial 1-page transcript p.29, (as it relates to justice's alleged foreknowledge and awareness of duty to instruct jurors on every element of charge, as Exhibit "I").**

Notwithstanding the egregious violations of Petitioner's Constitutional rights to Due Process and Equal Protection of the law, in respect to the aforementioned claims, Petitioner asserts that the excessive and inordinate delay in preparing and filing a brief to the Rhode Island Supreme Court on the merits of his Constitutional claims are **solely** attributable to the State and the deficient performance of various court-appointed attorneys.

First, Petitioner was appointed attorney Neil Steingold in the Providence Superior Court forum. Attorney Steingold **"refused to enter his appearance."** Next, Petitioner was appointed attorney Mark Smith for purposes of appeal, however, Smith **"declined appointment"** claiming that "he was not on the Rhode Island Supreme Court list of appointment, and therefore, couldn't represent Petitioner. Nevertheless, Petitioner discovered on **December 22, 1998,** that the State deliberately withheld exculpatory and impeachment evidence, and made an illegal inducement to two key witnesses before trial. This discovery was made **"after"** attorneys Neil Steingold, and Mark Smith, **declined appointment.** Additionally, when attorney Smith declined, the Superior Court appointed attorney Susan Iannitelli for purposes of appeal to the Rhode Island Supreme Court, however, this was in the interim of preparation and drafting a "Motion for New Trial Based on Newly Discovered Evidence" involving the Criminal Injuries Compensation Program Settlement Agreement with two key witnesses. When attorney Iannitelli realized she wanted nothing to do with the State's deliberate misconduct, and the fact that she could not represent Petitioner on his motion in the Superior Court, she withdrew from the case on **March 24, 1999.** <u>**See**</u>

**enclosed as <u>Exhibit "J"</u> (April 20, 1999, letter by trial justice Edward C. Clifton, to Stephen P. Nugent)**,(demonstrating that "a clerk note dated **March 24, 1999,** indicates that Paula Rosin's entry of appearance was filed on **March 10, 1999.")** This **ex parte** appointment was executed before attorney Iannitelli's official withdrawal on **March 24, 1999,** and over Petitioner's **objection** and **explanation** to Superior Court Justice Mark A. Pfeiffer, that "Petitioner was seeking a hearing on his already filed "Motion for New Trial Based on Newly Discovered Evidence," filed by certified mail receipt and documented in the Superior Court Docket History Report, C.A.No.P1/97-1715A, on **March 15, 1999,** prior to Iannitelli's official withdrawal on **March 24, 1999,"** but because attorney Paula Rosin had already **entered her appearance** in **ex parte** proceedings, without Petitioner's knowledge, and because she was appointed for appellate review, the Superior Court (Pfeiffer J.), overruled Petitioner's **objection** and **explanation** that Rosin could not represent the Superior Court "Motion for New Trial" but later was compelled to allow appellate attorney Rosin's **withdrawal. <u>See</u> (Superior Court Docket History Report in partial, C.A.No.P1/97-1715A, as <u>Exhibit "K"</u>).** Nevertheless, as shown from **<u>Exhibit "J"</u>**, trial justice Clifton's **April 20, 1999,** letter, demonstrates that Petitioner's "Motion for New Trial" was scheduled and heard on **May 3, 1999,** where appellate attorney Paula Hardiman deliberately argued against Petitioner's cause, without official authorization and therefore, committed legal malpractice, which subsequently created extreme bias, prejudice and the extensive and unreasonable delay in Petitioner's appellate review of his **1998** Conviction and illegally imposed Sentence, because

due to her deliberately arguing against Petitioner's motion the trial justice Edward C. Clifton, **"passed on the motion and transmitted the file to the Rhode Island Supreme Court erroneously,"** as shown from the enclosed **May 3, 1999,** (transcript), pages **1-22,** as **Exhibit "L".** See also, enclosed as **Exhibit "M"** **(State's Supplemental Memorandum in Response to Defendant's Petition for Writ of Certiorari, dated November 10, 1999)(admitting error in not ruling on Petitioner's May 3, 1999, motion for new trial based on newly discovered evidence),** stating, that "The undersigned **regrets**, and apologizes to the Court for, this **mistake**." Thus, admitting sole responsibility for both what now resulted in "excessive and inordinate" delay in appeal, and the extreme bias, prejudice and the like, that also resulted from the proceedings mentioned above, specifically, **after Paula Hardiman made a phone call to R.I. Supreme Court Clerk, Mr. Michael Cafferty Jr., id. at Tr. p.16,** subsequently resulting in numerous prejudicial Orders of that Court, signed by Michael Cafferty Jr., compelling Petitioner to represent himself on direct appeal **Pro se**, in violation of his Constitutional rights to Due Process and Equal Protection of the law, pursuant to **Evitts v. Lucey, 105 S.Ct. 830 (1985);** and **Harris v. Champion, 938 F.2d 1062 (10th Cir. 1991).** Moreover, due to the Superior Court's **ex parte** appointment of appellate attorney Paula Rosin, on **March 10, 1999,** over Petitioner's **objection** and **explanation,** that he was seeking to have his **March 15, 1999,** "Motion for New Trial" heard, and the subsequent confusion that arose from such, the Rhode Island Supreme Court appointed yet another appellate attorney, namely Stephen T. Morrissey. See **(Rhode Island Supreme Court Order dated**

**June 10, 1999, as <u>Exhibit "N"</u>).** The Rhode Island Supreme Court granted Petitioner's "Motion to Hold Docketing of Appeal in Abeyance" on **May 20, 1999,** shortly before Morrissey's appointment on **June 10, 1999,** after justice Edward C. Clifton erroneously passed on Petitioner's "Motion for New Trial" on **May 3, 1999,** and subsequently transmitting the case-file and papers to the Rhode Island Supreme Court. **<u>See</u> enclosed (R.I. Supreme Court orders dated May 20, 1999;** and **November 22, 1999, as <u>Exhibit "O"</u>)**(when the R.I. Supreme Court finally remanded the file and papers back to the Superior Court to hear the new trial motion). Incidently, appellate attorney Stephen T. Morrissey, later entered his appearance in the Superior Court despite his appearance and appointment by the R.I. Supreme Court. However, when Petitioner discovered that the R.I. Crime Victim Compensation Program File that attorney Morrissey obtained by "Subpoena," was "incomplete" he reasonably requested Morrissey to seek and obtain the remaining withheld exculpatory and impeachment evidence. This request did not sit well with attorney Morrissey, who as a result of opposition to such request filed a "Motion to Withdraw his Appearance in both Superior and Supreme Courts." Petitioner later filed a second "Subpoena" for the undisclosed evidence and the file was again produced on **December 10, 1999.** <u>**See**</u> <u>**Exhibit "E"**</u> (as addressed on page 8 in relationship to the Subpoenaed evidence and the State's two (2) Motions to Quash). As a direct result of the controversial issue of filing a second Subpoena for the undisclosed evidence, that Petitioner sought and obtained on his own, Petitioner was denied newly appointed counsel for his "Motion for New Trial Based on Newly Discovered Evidence," which wasn't heard

until **December 10, 2002.** Notably, Petitioner diligently sought after trial transcripts that were relevant to his direct appeal and crucial to the challenging of his illegally imposed Sentence on **July 10, 1998,** when he was denied counsel altogether for his [first], "Motion for New Trial and Sentencing hearings without any verbal or written waiver for those critical stages." The transcripts that he repeatedly tried to procure were that of his "Determination of Attorney" proceedings on **June 9, 1998,** before (Pfeiffer J.), which in essence were an extension of his criminal trial, because trial counsel had been granted his "Motion to Withdraw" on **May 21, 1998,** and new counsel was appointed on **June 9, 1998,** for purposes of representing Petitioner for his [first] "Motion for New Trial and Sentencing hearings on **July 10, 1998.**" **See Rheuark v. Shaw, 628 F.2d 297 (1980).** Petitioner immediately filed a motion for said transcripts after the egregious violation of his Sixth Amendment right to counsel on **July 10, 1998,** however, the same were deliberately withheld thru **December 2004,** as shown from **Exhibit "P" (R.I. Supreme Court Order dated June 4, 2004)**(ordering the State to provide said transcripts). **See** also, **Exhibit "Q" (Providence Superior Court Order dated August 7, 2002, id. at p.2, paragraph 3)**(deliberately restricting and denying Petitioner's right and repeated motion for said transcripts, so he could properly redress his Constitutional claims, pursuant to Rhode Island Superior Court Rules of Criminal Procedure, [Rule 35], prior to the docketing of his appeal), whereby, Superior Court Justice Edwin J. Gale, stated that "Should newly appointed counsel determine that it is still necessary that transcripts of Superior Court proceedings be prepared in advance of the he hearing on the Motion for New Trial, that attorney shall apply for an order to that effect." Yet (Gale J.) deliberately "narrowed scope of representation."

Interestingly, Superior Court Justice Edwin J. Gale's **August 7, 2002,** Order as **Exhibit "Q", id. at p.2, paragraph 1,** further exemplifies the blatant denial of trial transcripts for direct appeal. Specifically, his Order states, that "The Clerk of Court shall appoint a Class 1 attorney to represent Defendant Bedford for purposes of pursuing the pending Motion for New Trial **ONLY.**" Petitioner asserts that this alleged "deliberate" and "intentional" narrowing the scope of appointed counsel Damon D'Ambrosio's representation was a direct result of Petitioner's both seeking the **June 9, 1998,** transcripts, as well as his apprising and requesting attorney D'Ambrosio to address this meritorious and reasonable Constitutional claim, that he was, and is still under an illegally imposed Judgement of Conviction and Sentence that was adjudicated without the benefit of any trained attorney on **July 10, 1998,** nor for his "closing arguments" at trial on **May 19-22, 1998,** notwithstanding the "illegal inducement" to two key witnesses one month prior to trial. Justice Edwin J. Gale, was vividly aware of Petitioner's "void judgement" claim, because they were made known in Petitioner's **June 25, 2002,** extensive "Memorandum in Support of Motion for Reconsideration to Appoint Counsel," a motion that was granted on **August 7, 2002,** by (Gale J.). This same "Memorandum" dated **June 18, 2002,** can be referenced in **D.C.No.04-271L,** as **Exhibit "S". See** also, as **Exhibit "Q",** attached to justice Gale's Order **(Damon D'Ambrosio's December 1, 2002, Motion to Withdraw, id. p.1, at paragraph 4,& 6)**(as it relates to requests made **allegedly "outside the scope of representation of counsel").** Petitioner contends that the procurring of his trial transcripts, and the addressing of his "illegally imposed sentence" were Constitutional claims that were

both reasonable and paramount to Petitioner's Due Process and Equal Protection of the law, however, attorney Damon D'Ambrosio, was as determined to obstruct justice and violate Petitioner's Constitutional rights, as was Superior Court Justices Edwin J. Gale, and Edward C. Clifton. It was incumbent upon attorney D'Ambrosio's position as Petitioner's lawyer, insomuch as he was made aware of the seriousness of Petitioner's Constitutional claims, arising from both the Trial and Sentencing Hearings, however, he chose not to file a necessary "Interlocutory appeal to the Rhode Island Supreme Court" as it pertained to his "limited scope of representation." The actions, inactions and subsequent misconduct by attorney D'Ambrosio, resulted in his not calling Petitioner's timely filed list of witnesses for the **December 10, 2002**, "Motion for New Trial Based on Newly Discovered Evidence" and his deficient representation clearly "blotted out the essence of a substantial defense" under the standard of **Angarano v. United States, D.C.App., 312 A.2d 295, 298 n.5 (1973), rehearing denied, D.C.App., 329 A.2d 453 (1974)(en banc);** and **Johnson v. United States, 413 A2d 499.**

During the course of Petitioner's pursuit to obtain the trial transcripts for his redress of the Superior Court "illegal and void judgement" claim, he was appointed another appellate attorney, namely, Michael Devlin. He was appointed by the Rhode Island Supreme Court on **March 28, 2003**, however, after several months of "playing dead" Petitioner filed a letter requesting a **formal entry of appearance. See enclosed as Exhibit "R" (Petitioner's May 15, 2003, letter to attorney Michael Devlin). See also, (attached response letter myster-**

**iously**, **dated "February 9, 2003," when it was actually received on June 2, 2003, as shown from the attached "copy of envelope it was sent in," as Exhibit "R", enclosed.** The alleged "falsified" date was apparantly altered to "cover-up" the fact that attorney Devlin, never made an official entry of appearance in Petitioner's case of **C.A.No.2003-30,** and because he wasted Petitioner's valuable time, presumably, made an alteration in the actual date of the above noted **February 9, 2003,** letter so that future fact-finders would overlook a three (3) month gap that further delayed Petitioner's cause. **See enclosed as Exhibit "S", (R.I. Supreme Court Docket History Reports in C.A.No.2003-30; and C.A.No.1999-209. See also, Docket filing of 04-07-2003,** (relective of Petitioner's Pro se Motion for Summary Disposition Order for Transcripts of aforementioned Determination of Attorney proceedings of **June 9, 1998, granted** motion).

## Conclusion

In view of the aforementioned claims that resulted in long periods of unnecessary delay between appointments of the various attorneys, and the extensive delay in filing of a direct appeal that resulted from the State's deliberate withholding of trial transcripts germane for both post-trial motions in the Superior Court, and direct appeal to the State Supreme Court, as well as the extensive delay in the hearing of **Petitioner's** "Motion for New Trial Based on Newly Discovered Evidence," because of deliberate withholdings of that independent evidence, and the trial justice's deliberate error in passing the motion for new trial as evinced from the **May 3, 1999,** transcripts as **Exhibit "L"**, and the State's admission in **Exhibit "M"**, reasonable minds

would agree that "the State of Rhode Island was negligent in it's failure to disclose 'exculpatory and impeachment' evidence prior to Petitioner's criminal trial, and thereafter, resulting in excessive and inordinate delay in filing a direct appeal. The State was negligent in erroneously passing on Petitioner's 'motion for new trial based on newly discovered evidence,' on **May 3, 1999**, which, resulted in further unreasonable delay in direct appeal. The State was also, negligent in deliberately withholding trial transcripts, and other evidence for both his proper defense and direct appeal of an otherwise 'illegal and void judgement' of conviction and sentence of **1998**, and negligent in it's "failure to supervise its appointed attorneys," as enunciated in **Simmons v. Reynolds**, **898 F.2d 865**, thus, causing him appreciable prejudice."

Petitioner asserts that "Exhaustion will be required unless "there is no opportunity to obtain redress in the state court or **if the corrective proces is so clearly deficient as to render futile any effort to obtain relief."** Duckworth v. Serrano, **454 U.S. 1,3 (1981). "Futility" may be established by demonstrating that relief has been diligently sought in the state courts but those efforts have been frustrated by an inordinate delay on the state's part." Whitman v Ventetuolo**, 781 F.Supp. 95, 98 (D.R.I. 1991)**(citing Odsen v. Moore**, 445 F.2d 806, 807 (1st Cir. 1971).**

Petitioner contends that his claims described herein, and in his pending "petition for writ of habeas corpus" in **D.C.No.07-00144**, far outweigh and transcend the standard of bypassing the exhaustion requirement, pursuant to **28 U.S.C. §2254(b)(1)(B)(i)(ii)**, and those

delineated from in the above noted cases, thereby, warranting the granting of Petitioner's instant "Petition for Writ of Habeas Corpus" that this "Supplemental Memorandum" supports, along with it's **Exhibits A-S**.

Therefore, for all the aforementioned reasons, Petitioner prays that the instant "Petition for Writ of Habeas Corpus" in **D.C.No.07-00-144**, be granted, ordering the immediate release of Petitioner Bedford, from unlawful State custody of the Rhode Island Department of Corrections Maximum Security facility in Cranston, Rhode Island. Petitioner further requests that this Honorable Court issue any other Orders it deems proper and just.

**Respectfully submitted**

**Dated: August 3, 2007.**

Normand Bedford

**NORMAND BEDFORD, Pro se**
**P.O. BOX 8273**
**CRANSTON, RI 02920-0273**

## Certification

I the undersigned hereby certify, that I caused a true copy of the within "Supplemental Memorandum in Support of Petition for Writ of Habeas Corpus, in D.C.No.07-00144, with its Exhibits A-S, to be mailed this 9th day of **August**, **2007**, postage prepaid, to: Mr. Aaron L. Weisman, RI Attorney General's Office, Providence, Rhode Island 02903; Copy sent to U.S. District Court, Office of the Clerk, 1 Exchange Terrace, Providence, Rhode Island 02903, via certified mail receipt, article No. 7005 1820 0003 5999 0820.

Normand Bedford