UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NORMAND BEDFORD
(Petitioner)

v.

STATE OF RHODE ISLAND, ET AL., Director Ashbel T. Wall II, Rhode Island Department of Corrections, et al.
(Respondents)

D.C.No.07-144S;
Companions:
D.C.Nos.04-271L;
D.C.No. 05-095L



# PETITIONER'S OBJECTION TO SENIOR UNITED STATES MAGISTRATE JUDGE JACOB HAGOPIAN'S REPORT AND RECOMMENDATION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS

Now comes Petitioner, NORMAND BEDFORD, in the above entitled matter and hereby, submits his "Objection to Senior United States Magistrate Judge, Jacob Hagopian's, Report and Recommendation to Dismiss Petition for Writ of Habeas Corpus," dated **September 4, 2007.** See **(Hagopian's R+R, at Exhibit "E")**

## Facts and Travel

On **April 20, 2007,** Petitioner, filed a pro se "Petition for Writ of Habeas Corpus," pursuant to **28 U.S.C. §2254,** seeking to be released from State custody. Petitioner filed a host of other motions in conjunction with his above noted petition. On **September 4, 2007,** Senior United States District Court Magistrate Judge, Jacob Hagopian, issued his Report and Recommendation to Dismiss Petition on the grounds that Petitioner has not exhausted his State remedies, when the volumes of evidence submitted by Petitioner support otherwise. U.S. Magistrate Judge Hagopian, further issued numerous Orders in respect to Petitioner's collateral motions.

Petitioner's numerous State and Federal Constitutional claims arise from his [1998], "illegal and void judgment of conviction and sentence," obtained by fraud, malicious prosecution and abuse of process, as well as conspiracy to obstruct justice driven by a "corr-upt endeavor," in violation of **18 U.S.C. §1983;** and **§1001;** and **42 U.S.C. §1983.**

Petitioner asserts that United States District Court Senior Magistrate Judge, Jacob Hagopian's (hereinafter, [U.S.M.J.]) Report and Recommendation (hereinafter, [R+R], at 1) recites a profound misrepresentation of material facts, whereby, he erroneously states, that "Bedford filed a notice of appeal with the Rhode Island Supreme Court but failed, and continues to fail, to comply with the orders of that court to supply a brief in support of his appeal." This mis-representation will be identified hereinafter.

Another blatant misrepresentation by [Hagopian, U.S.M.J.], is cited on page 2, of his **September 4, 2007,** [R+R], wherein, he wrongly states, that "Bedford, apparantly, is proceeding **pro se** on his dir-ect appeal due to his inability to get along with the countless lawy-ers that have been appointed to represent him," notably, citing, **See Bedford v. Wall, C.A. No. 04-271L, Report and Recommendation dated Oct. 14, 2004, at 2 (Hagopian, U.S.M.J.).**

Indeed, the aforementioned **knowingly** and **willful** misrepresent-ation of material facts in a United States District Court of law is not only shocking to the senses, but are an alleged violation of **18 U.S.C. §1001;** and **§1503,** defined as obstruction of justice, and

fraud and false statements in general. Interestingly, these same claims were described "verbatim," catagorically, and point for point, in Petitioner's "Criminal Complaint, bonded by Affidavit and Claim of Lien," filed against [Hagopian, U.S.M.J.], and his co-conspirator, Rhode Island Assistant Attorney General, Aaron L. Weisman. However, though the "Criminal Complaint" was filed via certified mail receipt, with the United States Attorney, Robert Clark Corrente; as well as, Marilyn Shannon McConaghy, Insurance Commissioner for the State of Rhode Island; Aaron L. Weisman; and United States Senior Magistrate Judge Jacob Hagopian, the same is being blatantly ignored by the parties. Notably, the same "Criminal Complaint" was filed with this United States District Court, certified **August 9, 2007,** and sent via certified mail receipt on two (2) seperate occasions, but nonetheless, **never recorded in the Docket History Report, in D.C.No.07-144S.** This Court also failed to record Petitioner's filing of his "Motion for Relief from Judgment and Orders," in **D.C.Nos.04-271L;** and **05-095L,** to which, the "Criminal Complaint, Affidavit and Claim of Lien," was attached and referenced as an **exhibit** in the above noted motion. The certified mail receipts of those packages are verified by article Nos.7005 2570 0001 4829 6039; and 7005 2570 0001 4829 6480. The first filing cover-letter was dated **August 1, 2007,** and the second filing cover-letter was dated **August 23, 2007.**

Despite the serious nature of the above "concealment of evidence" allegations, which form the underlying foundation of his "exhaustion" claims that warrant immediate relief through habeas corpus remedies, Petitioner points to another deliberate misrepresentation

of material facts, described on page 2, of [Hagopian's R+R], wherein, he states, that "[T]he record supplied by Bedford demonstrates that he has had no fewer than ten attorneys, most of whom were either fired by Bedford or were forced to withdraw due to disciplinary complaints filed against them by Bedford."

In addressing the first of [Hagopian's, U.S.M.J.] bold misrepresentations of material facts, Petitioner concedes that ***though a notice of appeal was filed, he was compelled to move the Rhode Island Supreme Court to hold the docketing of his appeal in abeyance, in view of the well recognized "raise-or-waive rule," due to the late discovery that the State delieberately withheld material exculpatory and impeachment evidence from the defense, both prior to trial and through sentencing, as well as their making an illegal inducement to key witnesses prior to Petitioner's criminal trial. **See (Petitioner's Supplemental Memorandum, D.C.No.07-144S, at ps. 5-7).**

As described at length throughout Petitioner's **August 20, 2007,** filed "Supplemental Memorandum," Docket #17, the State Superior Court caused Petitioner years of unreasonable delay in obtaining a ruling on his relevant "Motion for New Trial, Based On Newly Discovered Evidence," previously withheld, by erroneously **passing his motion.** The State Superior Court caused further undo prejudice to Petitioner, by continuing to withhold trial transcripts, and other evidence germane to Petitioner's direct appeal, as shown from the above noted "Supplemental Memorandum." More significant, is that the State Superior Court created undo bias and prejudice, as well as deliberate confusion, in

**"prematurely,"** and continually appointing and reappointing Petitioner *****appellate [a]ttorneys,** with the foreknowledge that Petitioner was seeking a ruling in the forum and jurisdiction of the Providence Superior Court, and not prepared to expedite a direct appeal of his completely "illegal and void judgment of conviction and sentence" of [1998]. These highly prejudicial events are supported by material evidence in support of the instant "Supplemental Memorandum" filed as Docket #17, yet these claims are being twisted and completely over-shadowed by [Hagopian's, U.S.M.J.], misrepresentations of material facts, described in his [R+R]. **See (Hagopian's, R+R, Exhibit "E").**

Technically, [Hagopian's R+R] at 2, grossly misrepresents the factual number of attorneys of record. For purposes of analysis, if a person was appointed fourteen (14) lawyers to represent him in a Court of law, but only seven (7) of those attorneys actually made a formal "entry of appearance," then technically, he had seven (7) attorneys of record, not fourteen (14). This analysis is corroborated by Petitioner's **July 10, 1998,** one (1) page transcript of his sentencing hearing in Providence Superior Court, where trial justice, Edward C. Clifton, noted that, "And what right, Mr. Bedford, can you articulate as to why this Court at this time should now seek to appoint, which would be - **well, technically,** Mr. Steingold **never entered his appearance** but he was the fifth attorney." **See (Superior Court transcript p.356, as Exhibit A, enclosed).** Thus, the record in the Petitioner's case would reflect twelve (12) appointments by the totality of both the Superior and Supreme Courts of the State, however, as shown from Petitioner's "Supplemental Memorandum" as Docket #17,

the actual number was greatly reduced from twelve (12), to **five** (5), in light of at least four (4), who **never entered an appearance**, and several more, who were erroneously appointed to represent Petition-er in a forum and jurisdiction of another Court. This calculated and repeated misnomer on the part of the State Courts barely scratch-es the surface of the ongoing conspiracy to obstruct due administrat-ion of justice currently plaguing and prejudicing Petitioner. Petit-ioner's "Supplemental Memorandum" as **Docket #17**, more fully describes the conspiracy. Perhaps this is the reason the State has objected to the filing of such. **See (Docket #23).**

Obviously, since these factual claims are irreproachable [Hagop-ian, U.S.M.J.], has failed to review the substantial memoranda, or he blatantly, chooses to make **knowing** and **willful** false and fraudul-ent statements, as described herein, and in the "concealed" Criminal Complaint, Affidavit and Claim of Lien, received by this United Stat-es District Court twice, via certified mail receipt, yet not **record-ed.**

On page 3 of [Hagopian's R+R], he wrongly states, that "Signif-icantly, Bedford has had recent proceedings in the state supreme cou-rt wherein he was directed to supply a brief on his claims by **Febru-ary 9, 2007,**" citing, **See Respondent's Exhibit 12.** And closing with, "Bedford, however, has refused to comply with that tribunal's direct-ives." **See (Hagopian's, U.S.M.J., Report and Recommendation dated September 4, 2007, as Exhibit "E").**

Petitioner asserts that the aforementioned "recent pleadings" referenced by [Hagopian, U.S.M.J.], were triggered by the Rhode Is-and Supreme Court's **"erroneous"** and **inopportune** Order of **January 4, 2007,** unlawfully restricting reasonable access to that Court, as well as, ordering him to file a brief on appeal by **February 9, 2007,** when Petitioner was on appeal to the United States Supreme Court, after several years of exhaustive federal appeals were obstructed by State officials, as described in Petitioner's "Supplemental Memorandum" and it's exhibits. **See (Petitioner's Objection and Response to State's Motion to Dismiss Petition, at Exhibit "K")**(as it relates to allegat-ions of Assistant Attorney General, Aaron L. Weisman's apparant cons-piracy to unlawfully reactivate Petitioner's "criminal appeal" using a "civil pleading" regarding unlawfully seized legal property by pri-son officials).

Petitioner sought to rectify the State Supreme Court's erroneous **January 4, 2007,** Order by filing a "Motion to Rescind and Stay Crim-inal Appeal." **See (Petitioner's Objection and Response to State's Motion to Dismiss Petition, at Exhibit "K"),** but instead of correct-ing the "conspiracy-born-order," the State Supreme Court issued a second Order after Petitioner sought to expedite his direct appeal by filing a relevant "Motion for Appointment of Counsel, and highly relevant Motion for Admission to Bail Pending Appeal." Instead of that Court appointing Petitioner counsel, it sent him all his plead-ings utilizing the initial **January 4, 2007,** Order to prejudice him and deny him "reasonable access to the Court." **See (State's Motion to Dismiss Petition, at Exhibit #14)**(using C.A.No.03-30, instead of

"conspiracy-born" civil case order number C.A.No.Su-06-0283)(which was a "Petition for Writ of Mandamus," requesting injunctive relief, because the State prison officials unlawfully confiscated 99% of all Petitioner's legal material, the same of which he needed to even consider pursuing his direct appeal). See **(State's Motion to Dismiss Petition, at Exhibit #15)Cf.,(Petitioner's Objection and Response to State's Motion to Dismiss Petition, at Exhibit "K").**

Notably, when the second State Supreme Court Order of **March 12, 2007,** was issued informing Petitioner that all his motions were being returned to him, including his "Motion to Rescind the **January 4, 2007,** Order," the same of which was being used to deny Petitioner "reasonable access to the Court," he had no choice but to file a second "Motion to Stay Criminal Appeal Pending Interlocutory Appeal" to this Court. See **(Petitioner's Petition Exhibit "A").** However, the State Supreme Court **"deliberately concealed"** his **March 17, 2007,** "Motion to Stay Criminal Appeal Pending Interlocutory Appeal," though the same was received by **certified mail receipt,** as described in Petitioner's (Objection and Response to State's Motion to Dismiss Petition, at page 10-11)(demonstrating the escalating prejudice by the State's repeated concealment of material evidence).

## Discussion of Law

Before this Court may entertain a petition for habeas relief, a petitioner must exhaust his remedies available in state court. See **28 U.S.C. § 2254(b)(1)(A).** A petitioner exhausts his state court remedies by fairly presenting his claims to the highest state court

with jurisdiction to consider them. **Keeny v. Tamayo-Reyes**, **504 U.S. 1, 9 (1992); Picard v. Connor, 404 U.S. 270, 276 (1971).** However, pursuant to **28 U.S.C. §2254(b)(1)**, a petitioner may bypass the exhaustion requirement if:

> (B)(i)there is an absence of available State corrective process; or (ii)circumstances exist that render such process ineffective to protect the rights of the applicant.

**See 28 U.S.C. §2254(b)(1).** Exhaustion will be required unless "there is no opportunity to obtain redress in the state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." **Duckworth v. Serrano, 454 U.S. 1,3 (1981).** "Futility" may be established by demonstrating that relief has been diligently sought in the state courts but those efforts have been frustrated by an inordinate delay on the state's part. **Whitman v. Ventetuolo, 781 F.Supp. 95, 98 (D.R.I. 1991)(citing Odsen v. Moore, 445 F.2d 806, 807 (1st Cir. 1971).**

In the case at bar Petitioner diligently sought State corrective process but because of the Court's blatant failure to correct it's erroneous Orders in respect to Petitioner's **(Objection and Response to State's Motion to Dismiss, at Exhibit "K")**, which was his relevant "Motion to Rescind **January 4, 2007**, Order," he was prejudiced by the subsequent restriction in the latter filing of a "Motion for Appointment of Counsel," pursuant to **Evitts v. Lucey, 105 S.Ct. 830 (1985); Harris v. Champion, 938 F.2d 1062 (10th Cir.1991);** and **Lewis v. Casey, 518 US 343, 135 LEd2d 606, 116 SCt.2174 (1996)**(as it

relates to "denial of meaningful access to the court."

Petitioner even went so far as to "beg and plead with the Supreme Court," suggesting that **"if this Court (Supreme Court), reconsiders and honors the enclosed 'motion for appellate counsel' by appointing the same,** and at the very least, rescinds the **January 4, 2007,** Order, whereby, 'a deadline date of **February 9, 2007,** to file brief on appeal' is **prejudicial,** then Appellant **'will not'** pursue his arguments for bail." As stated previously, "it is the desire of this Appellant to expedite his long awaited first appeal." **See (Petitioner's Objection and Response to State's Motion to Dismiss Petition, at Exhibit "N", Id. at page 7).**

After all, Petitioner realistically, had only one (1) "Appellate attorney." The record reflects and proves that the Superior Court prematurely, appointed Mark Smith, Michael Devlin, who both **never entered an appearance,** then went on to appoint appellate attorneys Susan Iannitelli, Paula Rosin, and Stephen Morrissey, who were appointed for purposes of appeal, at a time when Petitioner had been seeking his "Motion for New Trial based on Newly Discovered Evidence," filed on **March 15, 1999,** prior to the erroneous appointments of the aforementioned lawyers, supported by Docket History Report, C.A.No. P1/97-1715A. Thus, Petitioner technically, had only one appellate attorney, namely, Richard Corley, who failed to procure a necessary trial transcript for appeal, creating a genuine conflict of interest. Thus, pursuant to **Harris v. Champion, 938 F.2d 1062 (10th Cir.1991);** and **Evitts v. Lucey, 105 S.Ct. 830 (1985),** Petitioner was wrongly denied counsel for his first appeal.

Moreover, the Providence Superior Court appointed attorney Damon D'Ambrosio, on **August 8, 2002,** for purposes of representing Petitioner on his "Motion for New Trial based on Newly Discovered Evidence" **"only". See (Providence Superior Court Order, as Exhibit "B"**, by Justice Edwin J. Gale, Id. at p.2)(as it relates to both withholding trial transcripts and narrowing scope of representation). The Providence Superior Court finally heard and decided Petitioner's "Motion for New Trial Based on Newly Discovered Evidence" on **December 10, 2002,** after it failed to take up that motion, "erroneously," on **May 3, 1999,** a fact conceded to by the State. **See (State's Supplemental Memorandum in Response to Defendant's Petition for Writ of Certiorari, dated November 10, 1999, as Exhibit "C"),** stating, at keynote 1, ["The undersigned regrets, and apologizes to the Court, for this mistake.] Thus, the excessive and unreasonable delay caused by the State's admitted error, and the prejudice that resulted from such, as well as the State's subsequent and deliberate withholding of "material, exculpatory and impeachment evidence" related to that inordinately delayed proceeding, Petitioner is entitled to immediate relief, through habeas corpus precedents, enunciated in **Harris v. Champion, 15 F.3d 1538 (10th Cir.1990);** and **Odsen v. Moore, 445 F.2d 806 (1st Cir.1971).** The **Champion** court held, that "Turning to petitioner's claims for ineffective assistance of counsel, we conclude that excessive delay in filing an appellate brief may violate a petitioner's right to effective counsel. The violation ends, however, once the brief is filed, and unless the delay affected the outcome of the appeal itself, the past violation is not redressable through a

habeas action. Therefore, **only when a brief has yet to be filed can a petitioner obtain habeas relief for ineffective assistance of counsel resulting from excessive delay in filing an appellate brief."** See also, United States v. Pratt, 645 F.2d 89, 91 (1st Cir.1981).

Indeed, the record is not silent on the issue and exacerbated circumstances of the State's responsibility for the unconstitutional delay in Petitioner's direct appeal, nor is it silent on the claims that the State's repeated misrepresentations of material facts surrounding ineffective assistance of counsel has caused Petitioner undisputable prejudice in the State Court forum. **See (Petitioner's Supplemental Memorandum, in D.C.No.07-144S, and Exhibits).**

In view of the substantial submissions in the instant Petition for Writ of Habeas Corpus, demonstrating the "futility" in obtaining any State corrective process to protect his constitutional rights, he has in essence given the State Courts "one full opportunity to resolve any constitutional issues" through "one complete round of the State's established appellate review process," pursuant to **O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).**

Therefore, [Hagopian's, U.S.M.J.], Report and Recommendation to Dismiss Petition is clearly erroneous and contrary to his conclusions of law, and should be rejected and denied.

Petitioner respectfully, requests, pursuant to **28 U.S.C. §636(b)(1)**, that this Honorable District Court make **de novo determination** and careful review of the submissions and conclusions of law, especially, in respect to Petitioner's excessively delayed appeal claim,

as well as the repeated misrepresentations of material facts surrounding factual number of attorneys who, for all intents and purposes, "failed to enter their appearances," or represent him in the proper **jurisdiction,** where the record reflects every discrepency, and malfeasance by the State Judiciary.

In respect to **de novo determination,** pursuant to **28 U.S.C. §636(b)(1)(C),** "District judge must consider all issues of law arising from magistrate's conclusions of law and indicate ruling with respect thereto; district judge cannot just state that he adopts findings of magistrate and accepts recommendations contained in magistrate's report without indicating that he has considered or adopted magistrate's **conclusions of law. See Duryea v. Third Northwestern Nat. Bank, (1979, CA8 Minn) 602 F.2d 809, later app (CA8 Minn) 606 F.2d 823.**

## Conclusion

Petitioner was unlawfully convicted and sentenced in [1998], and because he discovered several months after sentencing, that the State deliberately withheld material, exculpatory and impeachment evidence, and made an illegal inducement to two key witnesses in violation of federal law, **18 U.S.C. §201(C)(2),** he sought to file a relevant "motion for new trial based on newly discovered evidence." This discovery and pursuit is the pivotal point at which the events opened a "pandora's box," the same of which, wrongly, prompted the Providence Superior Court to prematurely, and repeatedly appoint the Petitioner **"appellate lawyers"** in an attempt to compel him to **waive**

his constitutional claim, that "he was precluded from moving the Superior Court to 'suppress the two key witnesses' testimony at trial,' on the grounds that their testimony was unreliable in light of the State's implied 'illegal inducement' of their testimony, with a thing of value, in violation of **18 U.S.C. §201(C)(2)**, defined in the cases of **U.S. v. Russell, 411 US 423 (1973)**; and **U.S. v. Meinster, 619 F.2d 1041, 1045 (4th Cir. 1980). See (R.I. Crime Victim Compensation Program Award Letter dated December 22, 1998, at ps.5-8, of Petitioner's "Supplemental Memorandum" Exhibit "D")**. As early as **August 3, 1998**, the Providence Superior Court already appointed Petitioner his "first" appellate attorney, namely, Mark Smith, who never entered his appearance, and informed the Court several months later, that "he couldn't represent the Petitioner, because he was not on the Rhode Island Supreme Court list for appointments." Petitioner informed both attorney Mark Smith, and his successor, attorney Susan Iannitelli, who was the "second" appellate attorney appointed, that "he was seeking to file a "motion for new trial based on newly discovered evidence," and therefore, the two appellate counsel appointments were premature, because of their inability to represent Petitioner in the Superior Court forum. Petitioner was compelled to file his above noted motion, pro se, on **March 15, 1999**, as shown from the "Superior Court Docket History Report, C.A.No.P1/97-1715A." Before attorney Susan Iannitelli, was heard and granted her "motion to withdraw appearance," on **March 24, 1999**, and clearly in view of the Petitioner's **March 15, 1999**, filing, Superior Court Judge Mark A. Pfeiffer, had allowed the **"ex parte"** appointment of a "third" appellate attorney, namely, Paula Rosin, to **"enter her appearance"** on **March 10, 1999**, over Petitioner's

objection and explanation of his **March 15, 1999**, filing of his "motion for new trial based on newly discovered evidence," and his desire to obtain a necessary ruling, prior to his direct appeal, pursuant to due process, and equal protection of the law, under the fifth and fourteenth amendments to the United States Constitution. See **(Superior Court Docket Sheet, C.A.No.P1/97-1715A)**(as it relates to the alleged "corrupt endeavor" by the State in thwarting, impeding, and delaying Petitioner's above noted motion for new trial, and subsequent direct appeal now in excess of nine (9) years). Notably, appellate attorney Paula Hardiman, apparantly at the request of Providence Superior Court Judge Edward C. Clifton, was sent on **May 3, 1999**, in place of appointed attorney Paula Rosin, both of the Rhode Island Public Defenders' Office, to effectually, "argue against Petitioner's motion for new trial based on newly discovered evidence," which, after hearing resulted in Judge Clifton's "passing on the motion" and **erroneously**, sending Petitioner's file to the Rhode Island Supreme Court to allegedly, advance his "corrupt endeavor" to obstruct administration of justice, in violation of **18 U.S.C. §1503**, and deliberately, willfully, and knowingly, deprive Petitioner of a fair and impartial hearing on his motion for new trial based on newly discovered evidence, which, because of the bias, prejudice, and unreasonable delay, wasn't heard and decided until **December 10, 2002**. See **(Petitioner's Supplemental Memorandum, D.C.No.07-144S, and Exhibits A-S)**(as it relates to a more descriptive history of cause and prejudice warranting relief by means of the instant petition for writ of habeas corpus). Notably, the substantial claims of Petitioner are supported by numerous "Declarations" of material facts warranting immediate relief.

Undisputably, the initial delay in obtaining a ruling on Petitioner's "motion for new trial based on newly discovered evidence," as described herein, and the outstanding bias, prejudice, and the like, that later followed, can easily be termed "exceptional circumstances," because such prejudice has permeated the Rhode Island Supreme Court, as well as the Rhode Island Department of Corrections, entire Administration, collectively, exacerbating Petitioner's claims.

Additionally, because of the seriousness of Petitioner's claims, there has been repeated occurances of deliberate "concealment of material evidence," in conjunction with the State and United States Senior Magistrate Judge Jacob Hagopian, making **"knowing** and **willful"** false and fraudulent statements, that had a **natural tendency to influence, and even succeeded in influencing this tribunal in making a wrong determination** in prior petitions for writ of habeas corpus, in **D.C. Nos.04-271L;** and **D.C.No.05-095L.** Specifically, **See (Petitioner's Petition, at Exhibit "C", as ***Motion for Enlargment of Time to File Brief on Direct Appeal***)**(Cf. with **Exhbit "D"**, of Petition, as well as, Rhode Island Supreme Court Docket History Report, C.A.No.03-30, exemlifying "concealment of material evidence," as "Letter with Exhibits," to lead this tribunal into thinking Petitioner somehow **defaulted** or **failed to timely file brief on appeal).** Notably, [Hagopian's R+R) at 1-2, cite the exact same "misrepresentations of material facts," as declared in prior [R+R]'s in **D.C.No.04-271L;** and **D.C.No.05-095L,** without regard to the extreme prejudice suffered by Petitioner, nor with any regard for his **July 14, 2004, "Motion to Enlarge Time,"** as above noted **Exhibit "C"**, of pending petition for writ of habeas corpus. **See**

**(Petitioner's Petition, at Exhibit "B", Id. at ***Supreme Court Docket Listing, in C.A.No.03-30, at 8-2-2004, filing)**(concealing "motion to enlarge time to file brief on appeal,") Cf. with [Hagopian's R+R], in **D.C.No.04-271L**, dated **October 14, 2004, at p.2)**, which wrongly, states, that ("Nonetheless, the state supreme court issued a deadline for briefs to be filed in his direct appeal by **June 30, 2004, [which should be July 30, 2004]**. Bedford, however, **failed to timely file his brief** for his appeal with the state supreme court. Instead, Bedford filed the instant application in this tribunal, seeking release from state custody.") Petitioner asserts that strong emphasis should be made in respect to his **July 14, 2004,** above noted "motion to enlarge time to file brief on appeal," because had it not been "concealed," and overlooked, but reviewed and determined on it's merit, Petitioner would not have had to seek relief by means of habeas corpus, under **D.C.No.04-271L.** Petitioner has repeatedly submitted these facts and the "concealed material evidence" in several different Courts. Undaunted, [Hagopian, U.S.M.J.], advances the same misrepresentation of a material fact. See **also, (Petitioner's Objection and Response to States Motion to Dismiss Petition, Id. p.10, citing new claim of concealment of Petitioner's March 27, 2007) filed Motion and Memorandum with** [1] **Exhibits, received via certified mail receipt, article #7005 1820 0006-0503 8955)**(yet **not recorded** in Supreme Court Docket, **C.A.No.03-30,** now alleging at **April 2, 2007,** filing, **"Order appeal dismissed BFA." See (Copy of certified mail receipt dated 3-27-07, and Inmate Account Transfer Slip dated 3-21-07,** reflecting above noted filing with Supreme Court, **"never recorded."** These substantiated claims of obstruction of justice should have excused "exhaustion requirement" in prior petition, in **D.C.No.04-271L,** and the same should excuse requirement now. See **(Exh. "D") enclosed.**

Therefore, in light of the history of facts and supporting evidence, United States District Court Senior Magistrate Judge Jacob Hagopian's **conclusions of law** are without foundation, and his misrepresentations of material facts are unveiled, within his **September 4, 2007**, "Report and Recommendation," as well as in previous Reports and Recommendations to Dismiss Petitions in **D.C.Nos.04-271L;** and **D.C.No.05-095L**, thus, his R+R, in the instant petition under **D.C. No.07-144S**, should be **rejected** and **denied.** Contrariwise, Petitioner's Petition for Writ of Habeas Corpus, pursuant to **28 U.S.C. §2254**, should be **granted**, essentially, issuing an Order for the immediate release of Petitioner from unlawful custody of the Rhode Island Department of Corrections Maximum Security facility in Cranston, Rhode Island. For these reasons, Petitioner respectfully requests that Hagopian's R+R, be rejected and denied, and Petitioner's Objection be weighed in favor of his Petition for Writ of Habeas Corpus, granting the same, respectively.

Petitioner submits the attached "Declaration" in Support of the instant Objection to United State District Court Senior Magistrate Judge Jacob Hagopian's **September 4, 2007**, Report and Recommendation to Dismiss Petitioner's Petition for Writ of Habeas Corpus. Also enclosed is **Exhibits A-E**, in support of the same.

**Respectfully submitted**

Normand Bedford

NORMAND BEDFORD, Pro se
P.O. BOX 8273
CRANSTON, RI 02920-0273

## Certification

I, the undersigned hereby, certify, that I caused a true copy of the within "Objection to Hagopian's, U.S.M.J., Report and Recommendation dated **September 4, 2007**, to be mailed this 15th day of **September, 2007**, regular U.S. mail, postage prepaid, to: Mr. Aaron L. Weisman, Rhode Island Attorney General's Office, 150 South Main Street, Providence, Rhode Island 02903; Copy sent to United States Federal District Court, Ms. Wendy Geile, Clerk, 1 Exchange Terrace, Providence, Rhode Island 02903, via certified mail receipt, article No. 7005 2570 0001 4829 5261.

**Dated: September 12, 2007.**

Normand Bedford
**NORMAND BEDFORD, Pro se**
**P.O. BOX 8273**
**CRANSTON, RI 02920-0273**